The STATE of Ohio, Appellee,

v.

GREGORY, a.k.a. Allen, Appellant.

[Cite as *State v. Gregory* (1993), 90 Ohio App.3d 124.]

Court of Appeals of Ohio,
Butler County.

Nos. CA93–03–052, CA93–04–067.

Decided Aug. 30, 1993.

126

*John F. Holcomb*, Butler County Prosecuting Attorney, and *John J. McCracken*, for appellee.

*Fred Miller*, for appellant.

*Per Curiam.*

This cause came on to be considered upon a notice of appeal, the transcript of the docket and journal entries, the transcript of proceedings and original papers from the Butler County Court of Common Pleas, and upon the briefs of counsel, oral argument having been waived. Now, therefore, the assignments of error having been fully considered are passed upon in conformity with App.R. 12(A) as follows:

Defendant-appellant, Craig Gregory, a.k.a. Craig Allen, appeals convictions in the Butler County Court of Common Pleas for felonious assault and carrying a concealed weapon.

On December 19, 1992, at approximately 1:50 a.m., Officers Raymond Wyatt and David Swartzel of the Middletown Police Department were dispatched to a large party on Sixteenth Avenue after a report of gunshots being fired was received. Upon arriving at the scene, they found nothing but a large number of people standing outside. As the officers left the area, an individual flagged them down and provided them with a description of a car involved in the shooting. The individual stated that Craig Allen, who was wearing a green and orange Miami Hurricane jacket, was firing the shots. A short time later, the officers saw an individual wearing a green and orange jacket run between two houses.

When the officers stopped their cruiser momentarily because a car was blocking the street, Tiffany Gates approached the car and began talking to the officers through the driver's side window. As the officers were telling her they needed to leave, appellant stood next to her, leaned inside the window and said,

"Who's in there?" Gates pushed him away, telling him that the officers were her "buddies." At that time, the officers recognized appellant as the suspect who was possibly armed. Wyatt, feeling they were in danger, told Swartzel, who was driving, to leave immediately. When the officers left abruptly, Gates went back to the sidewalk where she heard appellant's friends tell him, "Don't do that, man. Don't do that." She heard appellant say, "I don't got nothing to lose."

As the officers sped away, Wyatt looked behind him and saw appellant aim a small chrome handgun directly at them and fire six to ten shots. He and Swartzel heard something hit the bottom of the car. Gates also saw appellant pointing the gun towards the police car and firing shots.

Wyatt and Swartzel turned the corner onto Old Verity Parkway and called for backup. While they were meeting with the other units a few blocks away, Swartzel saw the car which had earlier been described to them. Officer Jim Lambert pursued the vehicle, which pulled over to park in an open area. Lambert saw an orange and green arm come out of the passenger's side window and throw a small chrome handgun, which landed in a grassy area between the sidewalk and the street. Lambert later retrieved this gun and found it to be loaded with six rounds of ammunition—one in the chamber, five in the clip. The gun was capable of holding up to eight rounds.

The police ordered the occupants of the car to exit. Appellant, wearing an orange and green Miami Hurricane jacket, fought with the officers and had to be subdued. The occupants of the car were taken to the police station. Appellant remained belligerent and insisted that, although he had fired a gun earlier in the day, he had not fired a gun at the party and the gun recovered by the police was not his. When appellant was taken to a holding cell, he told Wyatt that if he saw Wyatt on the street, "he was going to shoot [Wyatt's] punk ass and make sure it was something bigger than a .25." Ronnie Allen, appellant's cousin, who was driving the car, told police officers that he saw appellant reach into his jacket, put his arm out the passenger side window and throw something which appeared to be a gun.

The following day, the officers returned to Sixteenth Avenue, where they found ten spent cartridge casings near where appellant was standing. They were sent to the Bureau of Criminal Investigation for analysis. The BCI report indicated that eight of the ten casings were definitely fired from the gun retrieved by Lambert and two others possibly could have been. An atomic absorption test established that appellant had recently shot a firearm.

On February 12, 1993, appellant was indicted for two counts of felonious assault pursuant to R.C. 2903.11(A)(2), each with a firearm specification pursuant to R.C. 2941.141, and one count of carrying a concealed weapon pursuant to R.C. 2923.12(A). A jury trial commenced on March 15, 1993. Appellant's defense was

that he fired the gun into the air and not at the officers. After hearing the evidence, the jury found appellant guilty as charged. He was sentenced to serve eight to twenty-five years' imprisonment on each count of felonious assault, to be served consecutively. He was also sentenced to serve three years' actual incarceration for each of the two firearm specifications, to be served consecutively with the sentences on each count of felonious assault. He was sentenced to serve one and one-half years' imprisonment on the carrying a concealed weapon charge to run concurrently with the sentences on the felonious assault charges. This appeal followed.

Appellant presents three assignments of error for review. In his first assignment of error, appellant states that the trial court erred in sentencing him to consecutive terms of imprisonment for each count of felonious assault, plus an additional three years' actual incarceration for the firearm specification with each count. Appellant argues that the two counts of felonious assault are allied offenses of similar import and that the trial court should have held a hearing to determine if the offenses were committed separately. He also argues that the trial court may not impose more than one term of actual incarceration on multiple firearm specifications where they are part of the same act or transaction. We find only appellant's argument relating to the firearm specifications to be well taken.

■ R.C. 2941.25 provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

In applying R.C. 2941.25, courts have used a two-step analysis. The first step requires a comparison of the elements of the offense for which the defendant is charged. Allied offenses of similar import are those offenses which correspond to such a degree that the commission of one offense will result in the commission of the other. *State v. Mitchell* (1983), 6 Ohio St.3d 416, 418, 6 OBR 463, 464, 453 N.E.2d 593, 594; *State v. Logan* (1979), 60 Ohio St.2d 126, 128, 14 O.O.3d 373, 374, 397 N.E.2d 1345, 1347. In the event the court finds the offenses are allied offenses of similar import, it must proceed to the second step of the analysis, which involves a review of the defendant's conduct to determine whether the

offenses were committed separately or with a separate animus as to each. *Mitchell, supra,* 6 Ohio St.3d at 418, 6 OBR at 464, 453 N.E.2d at 594.

■ We find that the two felonious assault charges were committed separately. This court has held that where a defendant commits the same offense against different victims during the same course of conduct, a separate animus exists for each offense. *State v. York* (Feb. 8, 1993), Butler App. No. CA92–06–109, unreported, at 4, 1993 WL 29050; *State v. Bonham* (Apr. 6, 1992), Clermont App. No. CA91–08–058, unreported, at 5, 1992 WL 68657. Appellant was aware of the presence of two potential victims in the car at which he fired multiple gunshots. Since appellant attempted to cause physical harm to two separate victims, he could properly be convicted of two counts of felonious assault and sentenced to serve consecutive sentences on each count. Accord *State v. Phillips* (1991), 75 Ohio App.3d 785, 789–791, 600 N.E.2d 825, 828–829.

■ Appellant further argues that the trial court should have held a hearing to determine if the two counts of felonious assault were allied offenses of similar import committed separately or with a separate animus. He relies on this court's decision in *State v. Dunihue* (1984), 20 Ohio App.3d 210, 20 OBR 256, 485 N.E.2d 764, in which we stated:

"Where a defendant pleads to multiple offenses of similar import, and the trial court accepts the plea, the court must conduct a hearing and make a determination, before entering judgment, as to whether the offenses were of similar or dissimilar import and whether or not there was a separate animus with regard to each crime committed." *Id.* at 211, 20 OBR at 257, 485 N.E.2d at 766.

However, in the present case appellant did not plead guilty to multiple counts, but was found guilty of multiple counts following a jury trial. Therefore, a hearing on whether the offenses were committed separately was unnecessary since the trial court had heard all the evidence necessary to make the determination. See *State v. Kent* (1980), 68 Ohio App.2d 151, 154, 22 O.O.3d 223, 225, 428 N.E.2d 453, 456.

■ As to the firearm specifications, R.C. 2929.71(B) provides that only one three-year term of actual incarceration can be imposed when the offenses charged are committed as part of the "same act or transaction." *State v. White* (1991), 71 Ohio App.3d 550, 553, 594 N.E.2d 1087, 1089. The word "transaction" contemplates a series of criminal offenses which develop from a single "criminal adventure," which have a logical relationship and which are committed within a continuous time sequence. *Id.,* 71 Ohio App.3d at 554, 594 N.E.2d at 1089; *State v. Moore* (1984), 20 Ohio App.3d 75, 76, 20 OBR 95, 96, 484 N.E.2d 756, 757. The "same act or transaction" determination should not be made with reference to the separate animus test of R.C. 2941.25. *White, supra,* 71 Ohio App.3d at 554, 594

N.E.2d at 1089; *Moore, supra,* 20 Ohio App.3d at 77, 20 OBR at 96, 484 N.E.2d at 758. We find, and the state concedes, that the offenses in the present case were committed as part of the same act or transaction, and therefore appellant may be sentenced to a term of actual incarceration for only one of the firearm specifications.

Accordingly, we sustain appellant's first assignment of error as it relates to the firearm specification. We enter the judgment the trial court should have entered and vacate one of the three-year terms of actual incarceration. See *State v. Bonnell* (1991), 61 Ohio St.3d 179, 183, 573 N.E.2d 1082, 1086, certiorari denied (1992), 503 U.S. ——, 112 S.Ct. 1205, 117 L.Ed.2d 444; *State v. Huntley* (1986), 30 Ohio App.3d 29, 32, 30 OBR 68, 70, 505 N.E.2d 1007, 1010.

In his second assignment of error, appellant states that there was insufficient evidence to find him guilty of carrying a concealed weapon. Appellant argues that the evidence did not show that the weapon was concealed. We find this assignment of error is not well taken.

R.C. 2923.12(A) provides that "[n]o person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance." A weapon is concealed if it is situated so as not to be discernible by ordinary observation. "[A]bsolute invisibility is not required, since ordinary observation does not extend to a search unusually careful, thorough or detailed * * *." *State v. Pettit* (1969), 20 Ohio App.2d 170, 174, 49 O.O.2d 200, 202, 252 N.E.2d 325, 328. A partially concealed weapon is "concealed" within the meaning of R.C. 2923.12. *State v. Amalik* (1987), 41 Ohio App.3d 101, 105, 534 N.E.2d 898, 902; *State v. Scott* (June 22, 1992), Preble App. No. CA91–08–015, unreported, at 9, 1992 WL 139368. Where the evidence is conflicting as to whether a weapon is concealed, the issue is one for the jury. *Pettit, supra,* 20 Ohio App.2d at 174, 49 O.O.2d at 202, 252 N.E.2d at 328.

The state presented evidence from which a jury could reasonably infer that appellant was carrying the gun hidden in his jacket. When Wyatt and Swartzel saw appellant put his head into the police car as they were talking with Tiffany Gates, they did not see a weapon. A few seconds later when the officers accelerated away, Wyatt saw appellant raise a small chrome handgun in his right hand. Further, Ronnie Allen testified that when he agreed to give appellant a ride home, he asked appellant if appellant still had a gun, and appellant said "no." Allen stated that he was unaware that appellant had a gun until he saw appellant take the gun out of his jacket and throw it out the window. Accordingly, we conclude that there was evidence that would convince the average mind beyond a reasonable doubt that the weapon appellant was carrying was concealed. A rational trier of fact could have found the essential elements of carrying a concealed weapon proven beyond reasonable doubt, and therefore the evidence

was sufficient to support the conviction. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. Appellant's second assignment of error is overruled.

■ In his third assignment of error, appellant states that the convictions for felonious assault were against the manifest weight of the evidence. Appellant argues that the evidence did not show he knowingly attempted to cause physical harm. We find this assignment of error is not well taken.

R.C. 2903.11(A)(2) provides that "[n]o person shall knowingly * * * cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

■ Appellant argues that the evidence showed that he was drunk, that he did not hit anything, and that he did not shoot at or threaten the officers when he had a better opportunity as they were parked talking to Gates. Therefore, the evidence does not show he acted knowingly. However, the officers testified that appellant fired multiple gunshots while pointing the gun directly at them. The shooting of a gun in a place where there is a risk of injury to one or more persons supports the inference that appellant acted knowingly. *State v. Cartellone* (1981), 3 Ohio App.3d 145, 148, 3 OBR 163, 166, 444 N.E.2d 68, 72. See, also, *State v. Green* (1991), 58 Ohio St.3d 239, 569 N.E.2d 1038.

■ We conclude that there was substantial evidence upon which the jury could reasonably conclude that all the elements of the offense of felonious assault had been proven beyond a reasonable doubt. Therefore, this court cannot reverse the jury verdict as being against the manifest weight of the evidence. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus. Appellant is really arguing that the testimony of certain witnesses was more credible. However, it is well settled that matters as to the credibility of evidence are for the jury to decide. *State v. Walker* (1978), 55 Ohio St.2d 208, 212, 9 O.O.3d 152, 154, 378 N.E.2d 1049, 1051, certiorari denied (1979), 441 U.S. 924, 99 S.Ct. 2033, 60 L.Ed.2d 397. Accordingly, appellant's third assignment of error is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed as modified.

*Judgment affirmed*
*as modified.*

JONES, P.J., KOEHLER and WILLIAM W. YOUNG, JJ., concur.