JOURNAL ENTRY AND OPINION
Defendant Raymond Mallet appeals his conviction for felonious assault in violation of R.C. 2903.11; improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161; and having a weapon under a disability in violation of 2923.13. The first two counts carried firearm specifications. The appellant was sentenced to a total of eight years incarceration as follows: three-year terms of incarceration on each of counts one and two, to be served consecutively; a one-year term of incarceration was imposed for each firearm specification, also to be served consecutively; and, a one-year term of incarceration on count three, to be served concurrently to the first two counts.
On November 2, 1998, shots were fired into the home of Mr. Clyde Champion[1]. Mr. Champion, who was in the home along with his son that night, heard at least two shots fired into the house. Earlier that evening, Mr. Champion received a threatening telephone call from the appellant. The caller stated, I know who you is. I know you. I know your daughter-in-law. I know your son. (T. 210.) The appellant instructed Mr. Champion, Tomorrow evening at 1:00 I want you to bring $1,600 around on Drexel and Parkwood. If you don't you are a dead MF'r. (T. 211.) The instructions continued, Put it in a white bag, throw it out and keep on going. Don't bring no policeman or anything with you. (T. 211.) He was told by the appellant that if he did not bring the money, he and his family would all be dead.
After the shots were fired into his home, Mr. Champion received another telephone call from the appellant. In this second telephone call the appellant claimed responsibility for the shooting. The first and second telephone calls were made by the same person (T. 212). Mr. Champion had caller identification on his telephone which recorded the telephone number at the boarding home in which the appellant resides. Later the next day, Mr. Champion found two bullet holes in his house and a bullet in a cushion of a chair on the porch.
Mr. Champion's daughter-in-law telephoned the police the next morning. The crimes were investigated by Cleveland Police Officer Franklin Jones. Officer Jones learned of the threatening telephone calls, noted the damage to the home, and observed Mr. Champion's caller ID. Officer Jones recognized the number from another investigation he had performed in the same neighborhood only two days earlier. The number was the same as a number recorded on the caller ID of the New Fellowship Missionary Church. The police arrested the appellant and placed him in the rear of a zone car. While the appellant was in the rear of the zone car, Mr. Champion was given an opportunity to hear the appellant's voice. Mr. Champion stood behind the zone car and the officers opened the rear door slightly. The appellant was asked to repeat the threats made to Mr. Champion. Mr. Champion indicated that he could hear perfectly and that the appellant was the man who had made the telephone calls.
Officer Jones also testified regarding his earlier investigation into an incident at the New Fellowship Missionary Church. On October 31, 1998, he responded to the church which is located at Parkwood and Olivet where he spoke with Rev. Frederick Knuckles, the pastor. Shots had been fired into the church and Rev. Knuckles indicated that the church had also received a telephone message directed at one member of the congregation, Mary Edwards. Officer Jones listened to the message and stated that in the message Ms. Edwards was called a bitch, a slut, Jezebel and a whore (T. 260). The caller indicated that Ms. Edwards was the cause of destruction and that the pastor should remove her from the church. If she was not removed, the caller would shoot up the church (T. 260). The church telephone also has caller ID and officer Jones recorded the number. The caller ID indicated that the telephone call originated at a boarding house where the appellant resides. After conducting his investigation, the appellant was a suspect.
Both the Rev. Knuckles and Ms. Edwards testified. Rev. Knuckles described the telephone message received at the church regarding Ms. Edwards. Ms. Edwards listened to the message and recognized the voice of her neighbor, the appellant. She looked up the name listed on the caller ID and discovered that the address was the same as the appellant's.
The appellant sets forth five assignments of error. The first assignment of error:
 THE TRIAL COURT ERRED BY ORDERING CONVICTIONS FOR IMPROPERLY DISCHARGING A WEAPON INTO A HABITATION OR SCHOOL AND FOR FELONIOUS ASSAULT TO BE SERVED CONSECUTIVELY BECAUSE THE OFFENSES ARE ALLIED OFFENSES PURSUANT TO R.C. S2941.25.
The appellant asserts that he was improperly sentenced for the offenses of felonious assault and for discharging a firearm at or into a habitation.
In State v. Butticci (Nov. 22, 1996), Lake App. No. 95-L-121, unreported, the court considered this issue and found that these two offenses are not allied offenses of similar import under the Supreme Court test in Newark v. Vazirani (1990), 48 Ohio St.3d 81. While this court acknowledges that Newark, supra, was overruled inState v. Rance (1999), 85 Ohio St.3d 632, the results of the following analysis by the court in Butticci is still applicable under new test set forth in Rance. The Butticci court held:
 The determination of whether two offenses are allied involves a comparison of the elements of the offenses. Newark v. Vazirani (1990), 48 Ohio St.3d 81. Basically, two offenses will be deemed to be allied when the respective elements of the offenses "`* * * correspond to such a degree that the commission of one crime will result in the commission of the other * * *.'" Id. at 83, quoting State v. Blankenship (1988), 38 Ohio St.3d 116, 117.
 In describing the extent to which the elements of the two offenses must correspond before they will be considered allied, the Supreme Court of Ohio has held that the required relationship does not exist if the commission of the first offense will not "necessarily" result in the commission of the second. State v. Mughni
(1987), 33 Ohio St.3d 65, 68. Thus, the mere fact that the commission of the first offense may sometimes result in the commission of the second is not sufficient to show the required relationship. See State v. Demus (Mar. 15, 1995), Montgomery App. No. 13995, unreported.
 An example of the required relationship exists between the offenses of kidnapping and rape. These two offenses are allied because an individual can never commit a forcible rape without also restraining the victim of his or her liberty for a period of time. In commenting upon the relationship between these offenses, the Supreme Court has indicated that "[a] comparison of the elements of these two offenses reveals such a singularity of purpose and conduct that kidnapping may be said to be implicit within every forcible rape." (Emphasis added.) State v. Mitchell (1983), 6 Ohio St.3d 416, 418.
 In the instant case, appellant was charged with one count of felonious assault under R.C. 2903.11(A)(2).
 This statute prohibits an individual from knowingly causing, or attempting to cause, physical harm to a second individual through the use of a deadly weapon.
 The other two counts against appellant were made under R.C. 2923.161(A), which prohibits an individual from knowingly discharging a firearm at or into an "occupied structure" which is the place of habitation for another person. R.C. 2923.161(D) states that, for purposes of this offense, the term "occupied structure" shall be used in the same manner as it is defined in R.C. 2909.01(C). In turn, the latter statute provides that an "occupied structure" includes, inter alia, any house which, at the time of the offense, is "* * * occupied as the permanent or temporary habitation of any person, whether or not any person is actually present." (Emphasis added.)
 In comparing the foregoing offenses, this court would agree that, in most instances, a person who improperly discharges a firearm at a house will also commit the offense of felonious assault. However, this will not be the case if an individual is not present in the house when the shots are fired. Under the latter circumstances, an accused has only committed the offense of improper discharge.
 Specifically, we would note that before a defendant can be charged with felonious assault, he must have attempted to cause, or actually caused, harm to another person. Stated differently, the person must use the deadly weapon, i.e., a firearm, in such a way that he knowingly creates a risk of harm to another person.
 In contrast, a defendant can be convicted of improperly discharging a firearm even when his conduct did not create a risk of harm to another person. Pursuant to R.C. 2909.01(C)(2), another person does not have to be present in the house before it will be considered an occupied structure. As a result, the offense of improper discharge can be committed without the element of a knowing attempt to cause harm to another person.
 Thus, the offenses of improperly discharging a firearm and felonious assault are not allied offenses because the commission of the former offense does not necessarily result in the commission of the latter offense.
Pursuant to the foregoing analysis, this court finds that felonious assault and for discharging a firearm at or into a habitation are not allied offenses of similar import.
The appellant's first assignment of error is overruled.
The second assignment of error:
 THE TRIAL COURT ERRED BY ORDERING THE APPELLANT TO SERVE ONE YEAR FIREARM SPECIFICATIONTERMS PURSUANT TO R.C. S2941.141 WHERE THE EVIDENCE REVEALED ONLY ONE ACT OR TRANSACTION IN VIOLATION OF R.C. S2929.14(D)(1)(a)(i).
The appellant asserts that his firearm specifications should have been merged and only one sentence imposed because the felonious assault charge and the charge for discharging a weapon at or into a habitation arose out of a single transaction. The appellee argues that the appellant should have been sentenced under R.C. 2929.14(D)(1)(a)(ii), however, since the appellant was not convicted of discharging a firearm from a motor vehicle, R.C.2929.14(D)(1)(a)(ii) does not apply.
R.C. 2929.14(D)(1)(a)(i) states that a court shall not impose more than one additional prison term on an offender where the felonies were committed as part of the same act or transaction. This court has held that where a defendant is convicted of two offenses, not allied offenses of similar import, but arising out of the same act or transaction, the trial court may impose only one firearm specification under R.C. 2929.14(D)(1)(a)(i). State v.Kaszas (Sept. 10, 1998), Cuyahoga App. Nos. 72546, 72547, unreported.[2] See also, State v. Gregory (1993), 90 Ohio App.3d 124; State v. Evans (Sept. 3, 1998), Cuyahoga App. No. 73018, unreported.
Here, as in Kaszas and Evans, this court must find that the appellant fired shots into the home on only one occasion. The appellant should have been subjected to only one prison term for the firearm specifications. Therefore, this case is remanded for re-sentencing.
The appellant's second assignment of error is well taken.
The third assignment of error:
 THE TRIAL COURT ERRED WHEN IT ADMITTED OTHER ACTS TESTIMONY IN VIOLATION OF R.C. 2945.59, EVID.R. 404(B) AND MR. MALLET'S RIGHTS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
The appellant argues that the admission of other acts evidence, specifically, evidence regarding the shooting at the nearby church was impermissibly used to show criminal propensity. The appellant asserts that the evidence was prejudicial and that the error was not harmless.
Evid.R. 404(B) states:
 (B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
R.C. 2945.59 states:
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
In State v. Baye (1999), 85 Ohio St.3d 348, the Supreme Court noted that the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St.3d 173; State v. Finnerty (1989), 45 Ohio St.3d 104. The Baye court then held that:
 Under Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove" a defendant's criminal propensity. "Other acts" evidence is admissible, however, if "(1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, [709 N.E.2d 491] plan, knowledge, identity, or absence of mistake or accident." State v. Lowe (1994), 69 Ohio St.3d 527, 530, 634 N.E.2d 616, 619; see, also, Evid.R. 404(B).
Here, the evidence of the appellant's other acts was admissible to show the appellant's plan in committing the offense. Substantial evidence presented that the other acts here were committed by the appellant. The telephone caller identification at the church gave the telephone number at the appellant's residence as the point of origin of the threatening telephone call regarding Ms. Edwards. Ms. Edwards positively identified the appellant's voice on the message, gave an outline of the threats made on the message, and related the sequence of events leading to the threatening telephone call. Rev. Knuckles testified that the bullet holes were not present in the church prior to the telephone call. This evidence was admissible to show that the appellant had previously used intimidating telephone calls and then fired shots at a structure to achieve some perceived end of his own. This pattern was repeated in the crime against Mr. Champion and thus it tends to prove a plan or scheme. The trial court did not err in finding this other acts evidence admissible.
The appellant's third assignment of error is overruled.
The fourth assignment of error:
 THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION WHEN HIS COUNSEL FAILED TO SUPPRESS A CLEARLY SUGGESTIVE VOICE SHOW UP.
The appellant asserts that he was rendered ineffective assistance of counsel by counsel's failure to suppress[3] the show up voice identification of the appellant by Mr. Champion.
Ineffective assistance claims are evaluated in a two-step process. First, the defendant must show that counsel's representation fell below an objective standard of reasonableness.State v. Keenan (1998), 81 Ohio St.3d 133, 152, citing toStrickland v. Washington (1984), 466 U.S. 668, 688. Second, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. See also State v. Davie
(1997), 80 Ohio St.3d 311, 331 and State v. Reynolds (1997),80 Ohio St.3d 670, 674. There is a strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy. State v. Hamblin (1988), 37 Ohio St.3d 153. Even debatable tactics do not constitute ineffective assistance of trial counsel, for it is obvious that nothing is seen more clearly than with hindsight. State v. Clayton (1980),62 Ohio St.2d 45, 49. A reviewing court must evaluate trial counsel's performance on the facts of the particular case as of the time of counsel's conduct. Strickland, supra.
In State v. Martin (1998), 127 Ohio App.3d 272, 275, the court cited to Neil v. Biggers (1972), 409 U.S. 188 and noted that in that case, the United States Supreme Court held that even though a show-up identification, involving the exhibition of just one individual to an eyewitness, as opposed to a lineup, is suggestive, it may, nevertheless, not offend constitutional due process if, under the totality of the circumstances, the identification is reliable. In Biggers, supra, the Supreme Court held that the factors to be considered in evaluating the likelihood of misidentification include: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness' description of the criminal; 4) the level of certainty demonstrated by the witness at the confrontation; and, 5) the length of time between the crime and the confrontation. The central question is whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive. Id.
In the case sub judice, the voice identification was properly admitted. Mr. Champion's testimony that he received two telephone calls from the same person provided Mr. Champion with an ample opportunity to hear the appellant at the time of the crime. When he was given an opportunity to listen to the appellant's voice the day after the shooting occurred, Mr. Champion recognized the voice as that voice from the telephone calls. Mr. Champion's testimony was unhesitating and the identification procedure itself was timely, thus, the standard set in Biggers has been met.
Assuming, arguendo, that counsel should have moved to have the voice identification suppressed, this court finds that such failure was not prejudicial to the appellant. The State presented compelling evidence of the appellant's guilt and the suppression of this evidence would not have changed the result. The appellant's identity was demonstrated by the testimony of Ms. Edwards, who immediately recognized the appellant's voice on the message left and the church, and from evidence of the caller ID information indicating that the point of origin of the calls to Mr. Champion and to the church was the residence of the appellant.
The appellant's fourth assignment of error is overruled.
The fifth assignment of error:
 THE TRIAL COURT ERRED WHEN IT SENTENCED THE APPELLANT TO CONSECUTIVE SENTENCES WHEN IT FAILED TO MAKE THE FINDINGS REQUIRED BY R.C. 2929.14(E)(4).
The appellant asserts that the trial court erred in imposing consecutive sentences.
R.C. 2929.14 governs the imposition of prison terms for felony convictions, stating in relevant part:
 (E)(4) If multiple prison terms are imposed upon an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
R.C. 2929.19(B)(2) provides that:
 (B)(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
 (c) If it imposes consecutive sentences under section 2929.12 of the Revised Code, its reasons for imposing the consecutive sentences.
In State v. Smith (March 9, 2000), this Court cited to Statev. Albert (1997), 124 Ohio App.3d 225, 230, which held that the trial court must explicitly engage in the analysis set forth in the statute when ordering consecutive sentences:
 R.C. 2929.14 requires the court to make a finding that the consecutive sentences are necessary to protect the public from future crime or to punish the offender and that such consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger posed to the public and that the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of the conduct. Because this was not done in this case, we remand the matter to the trial court for re-sentencing of the appellant and the inclusion of such a finding if the court, in its discretion, decides to impose consecutive sentences in this matter.
In State v. Cardona (Dec. 16, 1999) Cuyahoga App. No. 75556, unreported, this court found that pursuant to State v. Edmonson
(1999), 86 Ohio St.3d 324, trial court must make a record at the sentencing hearing that confirms trial court adhered to decision-making process required of the statute in imposing consecutive sentences. See also State v. Kimbrough (March 2, 2000), Cuyahoga App. Nos. 75642, 75643, 75644, unreported.
In the case sub judice, the trial court failed to indicate that multiple offenses committed by the appellant were so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of the conduct.
The appellant's fifth assignment of error is well taken.
This cause is affirmed in part and reversed in part.
The court finds there were reasonable grounds for this appeal. It is, therefore, considered that said appellant(s) and appellee(s) each pay one-half of the costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
TIMOTHY E. McMONAGLE, P.J., and JOHN T. PATTON, J., CONCUR.
 ________________________ JAMES D. SWEENEY, JUDGE
[1] Mr. Champion testified that he is 83 years old and has lived in his home since 1960.
[2] Likewise, this court has found that case law pertaining to allied offenses does not apply to specification issues. Firearm specifications are not in and of themselves offenses, they are specifications attached to various offenses that enhance the penalty. The single act or transaction analysis is the appropriate test for determining the merger of specifications. See State v.Inglesias-Rodriquez (March 16, 2000), Cuyahoga App. No. 76028, unreported. See also State v. Gregory (1993), 90 Ohio App.3d 124
where the court held that the same act or transaction determination should not be made with reference to the separate animus test.
[3] The record reveals that a motion to suppress was filed, but the motion did not specifically raise as an issue the voice identification by Mr. Champion.