JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Clarence Bowlding ("defendant"), appeals from his convictions of felonious assault with firearm specifications, burglary, and two counts of having a weapon while under disability. For the reasons that follow, we affirm.
 {¶ 2} On October 14, 2004, victims Tanisha Lash ("Lash") and Angie Terry ("Terry") were parked in a vehicle outside a deli in Cleveland. Lash claims that defendant, her ex-boyfriend, confronted her about her new boyfriend. Lash testified that she and Terry drove away from defendant and heard a pop. Terry got out of the car and defendant pointed a gun at her and then left the scene. When police arrived, a bullet was recovered from the right rear passenger side of Terry's vehicle. Lash believes that defendant was trying to shoot her.
 {¶ 3} On October 19, 2004, defendant and another woman entered apartment #302 at 11111 Detroit Avenue around 2:00 in the morning. It was disputed at trial as to whether defendant lived there with Lash on that date. Lash claims she leased the apartment and had thrown defendant out sometime in September of that year. Defendant claims he still lived there and also with his other girlfriend at that time. Defendant testified that he went there to get some of his things. He did not expect Lash to be there because he had disabled her electricity "out of spite."
 {¶ 4} Lash does not know how defendant got into the unit and defendant claims he used a key. The police officer who responded to Lash's call for help observed fresh pry marks on the door and a tire iron on the bed inside. Defendant admits to using the tire iron, however, claims he only did so to break the television set. He does not recall seeing any pry marks on the door when he entered the unit. Defendant left the scene before the police arrived.
 {¶ 5} Another apartment tenant confirmed that Lash ran into the hallway scantily clad claiming someone was trying to kill her. He allowed her into his apartment to call police, where she remained until they arrived. The tenant had seen defendant at the apartment and believed he lived there at some time. He did not know if defendant was living there on the day in question.
 {¶ 6} Defendant stipulated to his prior convictions and to the fact that a bullet was recovered from Terry's vehicle. Defendant admitted talking with Lash in front of the deli but denied having a gun or shooting at her. Defendant further admitted to the occurrences of October 19, 2004 but claimed it was his apartment. Defendant raises the following sole assignment of error for our review:
 {¶ 7} "I. The trial court erred in its judgment because its verdict of guilty to Counts 1, 3, 4 and a lesser included offense of burglary on Count 5 was against the manifest weight of the evidence."
 {¶ 8} The manifest weight standard provides:
 {¶ 9} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, supra at 1594." State v. Thompkins (1997), 78 Ohio St.3d 380, 387. We may only reverse a verdict as against the manifest weight by disagreeing with the factfinder's resolution of conflicting testimony. Id. [other citations omitted]. To do this, we must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting Tibbs, 457 U.S. 31 at 42.
A. Felonious Assault
 {¶ 10} In Count 1, defendant was charged with felonious assault by means of a deadly weapon, including firearm and other specifications. Defendant believes the evidence falls short of establishing that he attempted to cause physical harm to Lash by means of a deadly weapon. We disagree.
 {¶ 11} Lash testified that defendant was angry; that she heard something hit the car; and that she saw defendant brandishing a gun. She believed defendant was shooting at her because he was mad at her. Defendant himself admitted he had recently tampered with the electricity to her apartment "out of spite." Defendant placed himself at the scene and corroborated everything Lash said except denied having or using a weapon. It was undisputed, however, that police recovered a bullet from Terry's vehicle that day and there was no other explanation provided as to how it got there.
 {¶ 12} Shooting a gun in a place where there is a risk of injury to a person can support a finding that a person acted "knowingly" for purposes of felonious assault. State v. Salinas
(1997), 124 Ohio App.3d 379, 390, citing State v. Gregory
(1993), 90 Ohio App.3d 124; State v. Phillips (1991),75 Ohio App.3d 785; State v. Dunaway (June 24, 1993), Cuyahoga App. No. 62683. Further, felonious assault does not require an actual injury, it is enough that the defendant attempts to cause physical injury.
 {¶ 13} Although no gun was retrieved, it is not necessary to support a conviction. The Ohio Supreme Court has held that "[a] firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." Id. at paragraph one of the syllabus.
 {¶ 14} In this case, Lash testified that she saw defendant with a gun and a bullet was found in Terry's car following the confrontation. Accordingly, the manifest weight of the evidence supports, and is not against, defendant's conviction on Count one.
B. Burglary
 {¶ 15} Defendant challenges his conviction of burglary claiming he lived in the apartment that is the subject of this charge. The evidence conflicts on this point. Defendant testified he lived there, paid rent, and kept the utilities in his name. Lash testified it was her apartment with her name being the only one on the lease. She had allowed defendant to live there during the period of their relationship but excluded him from the unit when they broke up in September 2004.
 {¶ 16} Lash broke up with defendant because he was dating another woman. Defendant admitted he was seeing another woman but considered he lived at both women's apartments. No evidence was produced to establish defendant's claims that he paid rent or utilities. Likewise, the lease which purportedly bore only Lash's name was not introduced into evidence. The only tenant that testified said he did not know if defendant lived there or not. Accordingly, the trial court was left to resolve the conflict based on witness credibility.
 {¶ 17} The record as a whole depicts a growing animosity between Lash and defendant at times relevant. Defendant entered the unit around 2:00 in the morning and likely by use of a tire iron. Once inside, he undeniably smashed a television set with the tire iron. And, according to Lash, defendant tried to choke her. After thorough review, we cannot say that the trial court erred in its evaluation of the evidence or its resolutions of the witness's credibility. The odd hour of defendant's entry, coupled with the violence he admits to inflicting once inside, tend to disprove his position that he was lawfully on the premises. Accordingly, his conviction of burglary, a lesser included offense under the indicted charge, was not against the manifest weight of the evidence.
C. Having Weapons While Under Disablity
 {¶ 18} Defendant's argument here is predicated upon his arguments concerning Count 1. He maintains that if his conviction on Count 1 was improper, the HWWUD counts are nullified. As set forth above, defendant's conviction of felonious assault with a deadly weapon as charged in count one was proper.
 {¶ 19} Defendant's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., and Kilbane, J., Concur.