[Cite as *State v. Scott*, 2018-Ohio-3791.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

## JOURNAL ENTRY AND OPINION
### Nos. 106451 and 106474

# STATE OF OHIO

### PLAINTIFF-APPELLEE

vs.

# MARVIN SCOTT

### DEFENDANT-APPELLANT

## JUDGMENT:
### AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-17-615337-A and CR-17-617649-A

**BEFORE:** E.T. Gallagher, J., Kilbane, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** September 20, 2018

**[Cite as *State v. Scott*, 2018-Ohio-3791.]**
**ATTORNEY FOR APPELLANT**

Ruth R. Fischbein-Cohen
3552 Severn Road, #613
Cleveland, Ohio 44118


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Shannon M. Raley
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Marvin Scott, appeals from his convictions following a jury trial. He raises the following assignments of error for review:

1. The conviction against defendant was without sufficient proof and against the manifest weight of the evidence.

2. The conviction failed to merge allied offenses of similar import.

{¶2} After careful review of the record and relevant case law, we affirm Scott's convictions.

## I. Procedural and Factual History

{¶3} In May 2017, Scott was named in a six-count indictment in Cuyahoga C.P. No. CR-17-615337-A. The indictment charged him with felonious assault in violation of R.C. 2903.11(A)(2), with one- and three-year firearm specifications; improperly discharging into a habitation in violation of R.C. 2923.161(A)(1), with one- and three-year firearm specifications; domestic violence in violation of R.C. 2919.25(A); and three counts of endangering children in violation of R.C. 2919.22(A). The charges arose from an altercation between Scott and the victim, Porche Brooks, at their shared residence on February 24, 2017.

{¶4} In June 2017, Scott was named in a three-count indictment in C.P. No. CR-17-617649-A. The indictment charged him with having weapons while under disability in violation of R.C. 2923.13(A)(3); discharge of a firearm on or near a prohibited premises in violation of R.C. 2923.162(A)(3); and tampering with evidence in

violation of R.C. 2921.12(A)(1). The indictment arose from an altercation between Scott and Brooks on May 22, 2017.

{¶5} The cases were consolidated and proceeded to a jury trial, where the following evidence was adduced.

{¶6} Brooks testified on behalf of the state. With respect to Case No. CR-17-615337-A, Brooks testified that on February 24, 2017, she and Scott got into an argument at their shared residence in Cleveland, Ohio. At the time of the altercation, Brooks's three minor children were asleep in the home. Scott is the father of the two youngest children. Brooks testified that the argument took place in their bedroom. Scott and Brooks were intoxicated from drinking alcohol earlier that evening.

{¶7} At some point, a gun, which was previously stored under the bedroom mattress, fell to the floor. Brooks testified that she picked up the gun and pointed it at Scott in an attempt to "scare him off." As Scott and Brooks moved out of the bedroom and towards the kitchen, Scott managed to take the gun away from Brooks. He then fired a single shot into the kitchen ceiling while Brooks was standing in the kitchen doorway. Brooks testified that she immediately called 911, and Scott went outside the house. While she was on the phone, Brooks stated to the 911 operator that Scott was "shooting at her."

{¶8} Brooks testified that she was "under the influence," and was unable to recall precisely what she told the responding officers. However, she recalled showing the officers the bullet hole in the kitchen ceiling and conceded that she notified the 911

operator that Scott had fired a second shot at her from outside the house. She further agreed that her memory of the incident was more accurate at the time she made the 911 call then at the time of trial.

{¶9} Officer Nick Stuhm of the Cleveland Division of Police testified that on February 24, 2017, he received a dispatch for "a male and female fighting and she's being shot at and there's kids in the house." Upon arriving at the scene, Officer Stuhm secured the area and learned that Scott had fled the scene. Officer Stuhm summarized Brooks's version of the incident as follows:

> In speaking with the victim, while she was explaining the story, when we first got to Ms. Brooks explaining how they were upstairs wrestling over a gun, and he ended up chasing her down the stairs out of the house. As she ran out the side door, he popped a round off in the ceiling. He followed her outside, chased her around a little bit, and then when she got back inside, he fired another round at her [from the driveway outside of the house[.]

{¶10} During the course of his initial investigation, Officer Stuhm observed a bullet hole in the kitchen ceiling and a shell casing on the kitchen floor. Officer Stuhm testified that he and his partner also searched outside the home for shell casings. However, he did not recall if he or his partner discovered any additional physical evidence. The video footage captured on Officer Stuhm's body camera was played for the jury.

{¶11} Regarding Case No. CR-17-617649-A, Brooks testified that on May 22, 2017, she and Scott attended a family function together. At some point in the night, Brooks got into a verbal argument with Scott's brother. Brooks explained that the

argument quickly escalated into a physical altercation and that "[she] was getting jumped by [Scott's] whole family." When Scott learned what was occurring, he attempted to help Brooks and remove her from the situation. However, Brooks testified that Scott then got into a fight with an unidentified male. Brooks testified that the altercation continued outside near her vehicle. As Brooks was attempting to get into her vehicle, she heard multiple gunshots. Brooks adamantly denied seeing Scott fire a gun and testified that she was not aware if he was carrying a gun that evening. She further denied getting into a physical altercation with Scott and claimed that Scott's family members were responsible for her injuries.

{¶12} During her direct examination, Brooks testified that she remembered being interviewed by a Cleveland Heights police detective after the incident. After video footage of the interview was played for the jury, Brooks admitted to telling the detective that "[her] baby's father punched her in the face." She further admitted that she told the detectives that Scott owns a small firearm.

{¶13} Cleveland Heights police officers, Andrew Trhlin and Victor Lewis, each testified that upon arriving at the scene, they observed Scott by himself, pacing back and forth near a parked Dodge Charger. Officer Trhlin testified that Scott and Brooks appeared to be intoxicated and were "jawing back and forth with each other." Officer Lewis testified that while Scott was behind the parked vehicle, he heard an object hit the pavement. Upon investigating the noise, Officer Lewis discovered a gun underneath the Dodge Charger. In addition, the officers recovered multiple discharged shell casings

from the scene that were consistent with the type of ammunition that could be fired from the handgun that was found underneath the Dodge Charger.

{¶14} Cleveland Heights police detective, William Stross, testified that he was assigned to investigate the May 22, 2017 incident. In the course of his investigation, Det. Stross interviewed Brooks. Det. Stross summarized Brooks's version of the events as follows:

> She was assaulted at this family party and she went to her vehicle to retrieve a gun that she had legally and that the defendant came out, and I believe there were two — the sisters of the defendant were fighting with her, and the defendant also had a gun and fired a shot in the air.

A portion of Brooks's recorded interview was played for the jury. Det. Stross testified that when he asked Brooks whether Scott had fired a gun that evening, "it was clear she said yep, Y-E-P."

{¶15} Det. Stross further testified that he interviewed Scott. According to Det. Stross, Scott initially acknowledged that he had fired a gun during the altercation on May 22, 2017. However, Scott later changed his story and claimed that he did not fire the gun, but " was merely wrestling with someone else over the firearm."

{¶16} At the conclusion of trial, Scott was found not guilty of tampering with evidence. However, the jury returned a verdict of guilty on all other charges. At sentencing, the trial court imposed a two-year term of imprisonment in Case No. CR-17-617649-A, to run consecutive to a 13-year term of imprisonment in Case No. CR-17-615337, for a total prison term of 15 years.

## II. Law and Analysis

### A. Sufficiency and Manifest Weight of the Evidence

{¶17} In his first assignment of error, Scott argues his felonious assault conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.

{¶18} A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387; *Jenks* at paragraph two of the syllabus.

{¶19} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the

jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d 380, at 387, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶20} Although we review credibility when considering the manifest weight of the evidence, we are conscious of the fact that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Undeniably, the trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. Here, the jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶21} In Case No. CR-17-615337-A, Scott was convicted of felonious assault in violation of 2903.11(A)(2). That statute provides, in relevant part:

(A) No person shall knowingly do either of the following:

(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶22}** The attempt statute, R.C. 2923.02(A), states that "[n]o person, purposely or knowingly * * * shall engage in conduct that, if successful, would constitute or result in the offense."  "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

**{¶23}** On appeal, Scott argues the state failed to demonstrate that Brooks was "caused serious harm as required by the statute."  He suggests that "in all reality, it is [Brooks] who was the real offender subject to criminal charges herein."

**{¶24}** After careful review, we find no merit to Scott's position.  Contrary to Scott's argument, the state was not required to present evidence that Brooks was indeed caused physical harm.  Rather, the state was only required to demonstrate that Scott knowingly attempted to cause Brooks physical harm by means of a deadly weapon.  We find the state satisfied its burden of proof.

**{¶25}** In this case, the felonious assault conviction is supported by the evidence detailing Scott's conduct after he exited his home on February 24, 2017.  Consideration of the gunshot fired into the kitchen ceiling is not necessary.  Here, Brooks admitted at trial that she told the 911 operator that Scott was shooting "at her" from outside the home.  Similarly, Officer Stuhm testified that when he responded to the scene, Brooks stated that Scott had fired a "round at her [from the driveway outside of the house.]"  Under these circumstances, Scott's intent to cause serious physical harm is inferred from his shooting the gun in the victim's direction.  *State v. Phillips*, 75 Ohio App.3d 785, 792, 600 N.E.2d

825 (2d Dist.1991); *see also State v. Grant*, 8th Dist. Cuyahoga No. 90465, 2008-Ohio-3970, ¶ 18, quoting *State v. Gregory*, 90 Ohio App.3d 124, 131, 628 N.E.2d 86 (12th Dist.1993) ("'The shooting of a gun in a place where there is a risk of injury to one or more person supports the inference that appellant acted knowingly.'").

**{¶26}** Construing the foregoing evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found, beyond a reasonable doubt, that Scott attempted to cause Brooks serious physical harm by firing his gun in Brooks's direction from the driveway of their shared residence. Accordingly, we find the felonious assault conviction was supported by sufficient evidence.

**{¶27}** Furthermore, this is not the exceptional case where the jury clearly lost their way and created a manifest miscarriage of justice. We recognize that Brooks testified during her cross-examination that Scott never pointed a weapon directly at her during the February 24, 2017 altercation, However, Brooks indicated that she did not wish to be involved in Scott's prosecution and conceded that her memory of the shooting was more accurate at the time she called 911 than at the time of trial. As stated, the audio recording of the 911 phone call established that Brooks told the 911 operator that Scott was "shooting at her" from outside their home. The record further establishes that Brooks told the responding officers that, in addition to the shot fired in the kitchen, Scott had fired the gun in Brooks's direction from the driveway of the residence. As stated, it is within the province of the jury to evaluate the credibility of witnesses in light of inconsistent or contradictory testimony. *State v. Rudd*, 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106,

¶ 74.   Deferring to the jury's assessment of Brooks's testimony, we are unable to conclude that Scott's felonious assault conviction is against the manifest weight of the evidence.

**{¶28}** Scott's first assignment of error is overruled.

### B.   Allied Offenses of Similar Import

**{¶29}** In his second assignment of error, Scott argues the trial court failed to merge allied offenses of similar import.   He contends the felonious assault, improper discharge into a habitation, domestic violence, and endangering children offenses were committed with the same animus.

**{¶30}** We review a trial court's R.C. 2941.25 allied offenses determination under a de novo standard.   *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

**{¶31}** Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, * * * the defendant may be convicted of only one."

**{¶32}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 30-31, the Ohio Supreme Court detailed the allied offenses analysis:

> Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result because an offense may be committed in a variety of ways and the

offenses committed may have different import. No bright-line rule can govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id*. at ¶ 30-31.

**{¶33}** In Case No. CR-17-615337-A, Scott's convictions for felonious assault and domestic violence were merged as allied offenses of similar import. The state elected to proceed with sentencing on the felonious assault offense. Thus, Scott was sentenced in Case No. CR-17-615337-A on one count of felonious assault, with a three-year firearm specification, and one count of improperly discharging into a habitation, with a three-year firearm specification.

**{¶34}** To the extent Scott argues the trial court erred by failing to merge his remaining convictions, we note that Scott did not raise the issue of allied offenses of similar import at sentencing and has waived all but plain error. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. To satisfy plain error review in this context, Scott must demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus. *Id.*

**{¶35}** After careful review, we find Scott cannot meet his burden to demonstrate plain error. Regarding Case No. CR-17-615337-A, we are unpersuaded by Scott's vague

contention that his felonious assault conviction should have merged with his conviction for improperly discharging into a habitation. Since the release of the allied offenses test in *Ruff*, this court has determined that the offenses of felonious assault and improperly discharging into a habitation are not allied offenses of similar import. *See State v. Grayson*, 2017-Ohio-7175, 95 N.E.3d 1025, ¶ 17-25 (8th Dist.). We explained that the offenses are not alike in their significance and their resulting harm because the harm caused by a felonious assault conviction is to the victim, while the harm caused by improperly discharging a firearm into a habitation is to the occupied structure itself. *Id*. at ¶ 24-25. Following the clear precedent of this court, we find the trial court did not err by failing to merge Scott's felonious assault and improperly discharging a firearm into a habitation convictions.

{¶36} In Case No. CR-17-617649-A, Scott was convicted of having weapons while under disability and discharge of a firearm on or near a prohibited premises. This court has previously considered whether the offense of having a weapon while under disability should merge with the offense of discharge of a firearm on or near a prohibited premises. In *State v. Cowan*, 8th Dist. Cuyahoga No. 97877, 2012-Ohio-5723, this court determined that the animus for possessing a weapon while under disability is different from the animus for the discharge of a firearm over a prohibited premises, finding that "the animus of having a weapon under disability is making a conscious choice to possess a weapon." *Id*. at ¶ 39. This court explained that where a defendant acquires a weapon sometime prior to committing a separate crime, "[t]he fact that he then used the weapons to commit

the other crimes does not absolve [the defendant] of the criminal liability that arises solely from his decision to illegally possess the weapons." *Id.*

**{¶37}** In this case, Scott made a conscious decision to possess a firearm prior to the commission of the discharge of a firearm on or near a prohibited premises offense. Scott's use of the firearm during the family party on May 22, 2017, constituted a separate and distinct act apart from his decision to possess the weapon. Accordingly, we find Scott's convictions for having weapons while under disability and discharge of a firearm on or near a prohibited premises are not allied offenses of similar import. The trial court did not err by failing to merge the offenses.

**{¶38}** Based on the foregoing, Scott's second assignment of error is overruled.

**{¶39}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

[Cite as *State v. Scott*, **2018-Ohio-3791**.]
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR