OPINION
{¶ 1} Defendant-appellant Marcus Jones appeals from his conviction and sentence entered in the Mahoning County Common Pleas Court of attempted murder, a violation of R.C. 2923.02(A) and (E) and R.C. 2903.02(A), which contained a gun specification, a violation of R.C. 2941.145(A). Six issues are raised in this appeal. First, is whether Jones' speedy trial rights were violated. Second, is whether admission of other acts evidence amounted to plain error. Third, is whether the trial court's jury instruction on attempted murder was incomplete. Fourth, is whether the conviction was against the manifest weight of the evidence. Fifth, is whether there existed cumulative error which requires reversal. Lastly, a sentencing issue regarding State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856 is raised. For the reasons stated below, the conviction is hereby affirmed, however, the sentence is vacated and this case is remanded for resentencing pursuant to Foster.
 STATEMENT OF CASE {¶ 2} Appellant is married to Regina Peeples Jones, the victim in this case. On March 22, 2005, Jones allegedly forcibly entered Regina's home. (Tr. 193). He had a gun, a silver revolver, and kicked the door in. (Tr. 193, 194). Regina ran to the back bedroom, but Jones followed her. The two of them stayed in the bedroom together that night. (Tr. 196). The next morning, while he was in the bathroom, Regina attempted to leave the house. (Tr. 196). She grabbed the keys to her car and left the house. (Tr. 196-197). According to her, Jones caught her before she got to the car, he took her keys and then left in her car. (Tr. 196-197). At some point during this time Regina called 911. (Tr. 197). After the incident, she filed a police report. (Tr. 197).
 {¶ 3} Regina did not see Jones again until the evening of March 24, 2005. She was arriving home from shopping at Tiny's Beverage Mart. (Tr. 201). Jones ran up the driveway at her after she exited her car. (Tr. 202). In an attempt to protect herself, she jumped back into the car. (Tr. 202). Jones stuck a gun inside the car and aimed it at her head. (Tr. 203). She claims he hit her with the gun a couple of times. (Tr. 203). Jones then shot her in the wrist, abdomen, and breasts. (Tr. 203). Regina testified *Page 3 
that she thought he fired the gun five times. (Tr. 204). During this encounter, she claims he stated, "Die, Bitch." (Tr. 207).
 {¶ 4} After the incident, Jones ran away and Regina drove herself to the hospital. (Tr. 207). She was treated for multiple gunshot wounds, all of which were soft tissue injuries. At the hospital, she was interviewed by police. She told them her husband tried to kill her. (Tr. 210).
 {¶ 5} Two other people heard the gunshots. One was a neighbor of Regina's, Talmage Johnson. He testified that he heard one or two gunshots, but it was hard to determine how many because he was asleep prior to hearing the shots. (Tr. 261). The other person to hear the shots was Regina's niece, Lauren Gordon. She testified that she was on the phone with Regina during part of Regina's encounter with Jones. (Tr. 265). She explained that she heard five shots and her aunt saying something like, "my god, help me." (Tr. 265).
 {¶ 6} As a result of the incidents that occurred on both March 22 and 24, 2005, Jones was indicted for one count of aggravated burglary, a violation of R.C. 2911.11(A) (2)(B), one count of abduction, a violation of R.C. 2905.02(A)(2)(B), and one count of attempted murder, a violation of R.C. 2923.02(A)(E). All counts had firearm specifications, a violation of R.C. 2941.145(A).
 {¶ 7} Prior to trial, Jones filed a motion to discharge based upon speedy trial violations. He claimed the prosecutor's request for a continuance for a scheduled vacation should not toll the speedy trial time. The trial court overruled his motion. The case then proceeded to trial. The jury found him not guilty on the aggravated burglary and abduction charges. However, he was found guilty of the attempted murder charge and the gun specification.
 {¶ 8} Jones was then sentenced to ten years on the attempted murder charge and three years on the gun specification. Those sentences were ordered to be served consecutively. Jones timely appeals raising six assignments of error.
 FIRST ASSIGNMENT OF ERROR {¶ 9} "DEFENDANT/APPELLANT WAS DENIED HIS RIGHT TO A SPEEDY TRIAL AS THE STATE OF OHIO FAILED TO BRING HIS CASE TO TRIAL WITHIN THE TIME REQUIREMENTS AS SET FORTH IN ARTICLE I, SECTION 10 OF THE CONSTITUTION OF OHIO, *Page 4 
CODIFIED AT OHIO REVISED CODE SECTION 2945.71."
 {¶ 10} Jones argues the trial court erred when it failed to dismiss the charges based upon speedy trial violations. He contends that the prosecutor's requested continuance based on a scheduled vacation does not toll speedy trial time under R.C. 2945.72(H). The state contends it does.
 {¶ 11} This court previously set out our standard of review for speedy-trial issues in State v. High, 143 Ohio App.3d 232,2001-Ohio-3530. We stated:
 {¶ 12} "Our standard of review of a speedy trial issue is to count the days of delay chargeable to either side and determine whether the case was tried within the time limits set by R.C. 2945.71. Our review of the trial court's decision regarding a motion to dismiss based upon a violation of the speedy trial provisions involves a mixed question of law and fact. Due deference must be given to the trial court's findings of fact if supported by competent, credible evidence. However, we must independently review whether the trial court properly applied the law to the facts of the case. Furthermore, when reviewing the legal issues presented in a speedy trial claim, an appellate court must strictly construe the relevant statutes against the state." (Internal citations omitted.) Id. at 241-242. See, also, State v. Sanchez,110 Ohio St.3d 274, 2006-Ohio-4478, ¶ 8.
 {¶ 13} The attempted murder charge against Jones was a first degree felony. Thus, pursuant to R.C. 2945.71(C)(2) and (D), Jones was required to be brought to trial within 270 days. Furthermore, the triple count provision in R.C. 2945.71(E) is applicable to Jones since he was held solely on those pending charges and he was held in jail in lieu of bail. Thus, Jones was required to be brought to trial within 90 days.
 {¶ 14} Jones was arrested on April 12, 2005. On July 13, 2005, Jones filed a motion to discharge based upon speedy trial time. The date of the arrest does not count for purposes of speedy trial computation. Crim.R. 45(A). See, also, State v. Stamps (1998), 127 Ohio App.3d 219,223. Thus from April 13, 2005 to July 13, 2005, the date of the motion to discharge, 91 days had elapsed. However, despite Jones *Page 5 
insistence, there were at least two events during that 91 day period that tolled the speedy trial time.
 {¶ 15} The first event that tolled the speedy trial time was the trial court's granting of a reasonable continuance for the state. On June 20, 2005, the state filed a motion requesting the trial to court to continue the trial date of July 6, 2005 to a date after July 12, 2005. The reason for the request was that the prosecutor would be out of the state on a previously scheduled vacation and would not return until July 12, 2005. On June 23, 3005, the trial court granted the request and changed the July 6, 2005 trial date to a July 14, 2005 pretrial date.
 {¶ 16} R.C. 2945.74(H) states that, "The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion" tolls the time. In State v. Saffell (1998), 35 Ohio St.3d 90, 91-92, the Ohio Supreme Court held that a continuance based upon an arresting officer's vacation is reasonable. The Fourth Appellate District has stated that this same rule can apply to prosecutor's vacations. State v. Webb, 4th Dist. No. 01CA32, 2002-Ohio-3552, ¶ 21.
 {¶ 17} The continuance granted for the state's vacation was reasonable and was for a reasonable duration. Thus, it tolled the speedy trial time. Consequently, as the motion to discharge was filed 91 days after arrest and the reasonable continuance granted by the court was for more than one day, no speedy trial violation occurred. At the time Jones filed his motion to discharge, the speedy trial time of 90 days had not yet run. Thus, the trial court did not commit error in denying the motion to discharge.
 {¶ 18} Regardless, even if we found that the state's continuance did not toll the speedy trial time, the time was still tolled by Jones filing a pro se motion. On June 23, 2005, Jones filed a motion requesting permission to act as his co-counsel in his case. (He wanted to keep his attorney but he also wanted the ability to act as his own counsel.) This motion falls under R.C. 2945.72(E), which indicates that "any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused" tolls the speedy trial time. The motion was required to be ruled upon and as such it tolled the speedy trial time for a reasonable *Page 6 
amount of time to rule on the motion. Yet, before it was disposed of, on July 13, 2005, Jones filed the motion to discharge, which continued to toll speedy trial time.
 {¶ 19} At stated above, 91 days had elapsed at the time of the filing of the July 13, 2005 motion to discharge. Furthermore, the motion to act as co-counsel was a tolling motion; it tolled the speedy trial time for a reasonable period of time for the trial court to rule on the motion. Without determining exactly how many days was a reasonable amount of time to rule on the motion, at the minimum a couple of days would be reasonable. Thus, the 90 day speedy trial time had not elapsed when the July 13, 2005 motion to discharge was filed. Consequently, the trial court's decision to deny the motion to discharge was not in error. Considering all of the above, we find no error with the trial court's denial of the motion to discharge.
 {¶ 20} It is noted that Jones' whole argument under this assignment of error was based upon the prosecutor's continuance. He does not attempt to argue that even if the time between the continuance and the ruling on the motion to discharge was not counted, his speedy trial time was still violated. Thus, no argument regarding the remainder of time between the denial of the motion to discharge and the date of trial are raised. Accordingly, that time period is not discussed. This assignment of error lacks merit.
 SECOND ASSIGNMENT OF ERROR {¶ 21} "THE DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT PERMITTED TESTIMONY REGARDING OTHER CRIMES, WRONGS OR ACTS OF DEFENDANT/APPELLANT."
 {¶ 22} Jones alleges that at trial improper other acts evidence was admitted. He cites two specific instances. Both instances occurred during Regina's testimony. First, she testified that she began to see Jones again after he got out of jail in February 2005. (Tr. 192). The second instance was in a discussion concerning the incidents of March 22, 2005, the alleged abduction and aggravated burglary. Regina stated that she felt threatened by Jones because he had abused her in the past, beat her, strangled her and pulled a gun on her numerous times. (Tr. 252). She also stated that he forced her to have sex with him that night. (Tr. 253). *Page 7 
 {¶ 23} Jones did not object to the above testimony. Thus, we review for plain error. State v. Collins (Apr. 10, 2001), 10 Dist. No. 00AP-650, citing State v. Moreland (1990), 50 Ohio St.3d 58, 62. Therefore, we must determine (1) whether there was error in the first place; if so, (2) whether the error is an obvious defect in the trial proceedings; and (3) whether the error affected the outcome of the trial.
 {¶ 24} Evid.R. 404(B) addresses other acts evidence. It explains that, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 25} The first instance of alleged other acts evidence occurred when Regina mentioned that Jones had gotten out of jail. This shows that Jones was found guilty of crimes in his past. Her testimony, however, was used solely as foundation. Prior to stating that she started seeing him after he got out of jail, she indicated that they were married but that they had been separated on and off for the past five years. Thus, it established when she started having contact with Jones again. It was not used to show Jones' bad character. As such, the statement did not amount to error.
 {¶ 26} Regardless, even if it was error for that statement to come in, it did not amount to plain error. The jury convicted Jones only on the attempted murder charge. It did not convict him on the abduction or aggravated burglary charges. If the jury had been using the statement about Jones being in jail as character evidence, that he acted in conformity with committing past crimes, then it would have found him guilty of all charges. The fact that they acquitted him on two of the charges shows that the alleged character evidence showing that Jones was previously in jail did not affect the outcome of the trial. Moreover, the evidence of attempted murder was overwhelming. Regina positively identified Jones as the perpetrator, she had multiple gunshot wounds, which were confirmed by the ER doctor, and she testified that during the shootings Jones yelled "Die, Bitch." That evidence shows that the outcome would not have been different. Thus, there is no merit with the first instance of alleged admission of erroneous character evidence. *Page 8 
 {¶ 27} The second instance of alleged erroneous admission of character evidence was when Regina stated that Jones in the past had abused her. Reviewing her testimony in whole, it is apparent that the statements regarding any alleged past abuse were being used for the abduction charge, of which he was found not guilty.
 {¶ 28} In defending the abduction charge, Jones indicated that there were multiple times Regina could have left her house on March 22, 2005, when the alleged abduction occurred. The defense asked whether she tried to leave while Jones was asleep or went to the bathroom and whether she tried to climb out a window of the house to get away from Jones. Regina indicated that she did not try any of these. The defense even asked whether she had sex with him that night. She responded that she did but it was not consensual. On redirect, the prosecutor tried to show that Regina was afraid of Jones, based on the past abuse and the events of that night and that is why she did not try to get away. Thus, this evidence was being used to try to show why she did not leave.
 {¶ 29} The statements were not made to show that he acted in conformity with the past acts, but rather were used to show why Regina acted the way she did. Furthermore, that testimony went to the abduction charge, not the attempted murder charge. As stated above, Jones was only found guilty on the attempted murder charge; he was found not guilty on the abduction charge. Thus, for those reasons, admission of that evidence was not erroneous.
 {¶ 30} However, even if we determined that it was erroneous, it does not constitute plain error. As explained earlier, given the evidence and the fact that the jury found Jones not guilty on some of the charges, it is difficult to conclude that the result of the trial would have been different had this evidence not been admitted. Moreover, given the evidence that Jones shot Regina and stated, "Die, Bitch" while shooting her, it is hard to conclude that the result of the trial would have been different had the statements at issue not been admitted. This assignment of error lacks merit.
 THIRD ASSIGNMENT OF ERROR {¶ 31} "THE TRIAL COURTS INSTRUCTIONS ON THE OFFENSE OF ATTEMPTED MURDER WERE INCOMPLETE."
 {¶ 32} The trial court's instruction on attempted murder was as follows: *Page 9 
 {¶ 33} "The defendant is also charged with attempted murder. Before you can find the defendant guilty, you must find beyond a reasonable doubt that the defendant did on March 24, 2005, purposely and with sufficient culpability for the commission of murder engage in conduct that, if successful, would constitute or result in murder, and that he did purposely attempt to cause the death of Regina Peeples.
 {¶ 34} "A criminal attempt is when one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose.
 {¶ 35} "Conduct includes an act or an omission.
 {¶ 36} "Deadly weapon means any instrument, device or thing capable of inflicting death and designed or specially adapted for use as a weapon, or possessed, carried or used as a weapon.
 {¶ 37} "A deadly weapon is any instrument, device or thing which has two characteristics. The first characteristic is that it is capable of inflicting or causing death. The second characteristic is in the alternative, either the instrument, device or thing was designed or specially adapted for use as a weapon, or it was possessed, carried or used in this case as a weapon. These are questions of fact for you to determine." (Tr. 360-361).
 {¶ 38} Jones argues that this instruction is flawed because the trial court did not define purposely or cause. Jones acknowledges that he did not object to the instruction and that this assignment is reviewed under a plain error standard of review.
 {¶ 39} Jones is correct; the jury instruction does not define purposely or cause. However, it does state that the necessary culpable state is purposely. It also stated that Jones did "purposely attempt to cause the death of Regina Peeples." Thus, those elements were in the instruction, however, they were not defined.
 {¶ 40} Regarding the issue with the failure to define "cause," there is no case law to suggest that this is error. The word cause is this instant does not take on a special meaning. It is the normal definition of cause. Furthermore, nowhere in the three paragraph argument under this assignment of error, is it explained why cause *Page 10 
needs to be defined. Thus, as to cause, this court should find no error resulted from the failure to define it.
 {¶ 41} The other word at issue is "purposely." "Purposely" is the culpable mental state required for attempted murder. As a culpable mental state, it is an element of the offense and it does have a special legal definition that is more specific than every day use of the word.
 {¶ 42} In 1999, this court ruled on a case similar to the one at hand.State v. Black (Feb. 25, 1999), 7th Dist. No. 95CA7. In Black, the crime was felonious assault and the culpable mental state was knowingly. The trial court had instructed on the culpable mental state, however, it failed to define it for the jury. Reviewing the issue under a plain error standard of review, we stated the following:
 {¶ 43} "When certain terms are specifically defined in a statute, the better practice is for the court to instruct on the specific definitions. In the portion of the charge instructing on complicity to murder, the court defined the element of purposely, which implies that the court was aware that it is appropriate to define any applicable mental state. Still, the court failed to define knowingly [for the felonious assault offense]. While we concede that the trial court should have defined `knowingly' for the jury (see Ohio Jury Instruction 409.11, and State v. Mitchell (1989), 60 Ohio App.3d 106), we are not convinced that plain error is the inevitable result of a failure to do so. A trial court's omission such as this one does not per se constitute plain error. See State v. Adams (1980), 62 Ohio St.2d 151, 154. Therefore, we must determine whether the failure to define `knowingly' constitutes plain error in that the jury would not have found appellant guilty of complicity to commit felonious assault but for the omission." Id.
 {¶ 44} Following that reasoning, "purposely" should have been defined, however, the failure to define it does not per se constitute plain error. It would only constitute plain error if it can be determined that if "purposely" had been defined the jury would not have found Jones guilty of attempted murder. As explained above, the testimony established that Jones shot Regina multiple times and stated, "Die, Bitch" while he was shooting her. Considering that, we cannot conclude that had "purposely" *Page 11 
been defined, Jones would not have been convicted of attempted murder. Accordingly, plain error is not found, and this assignment of error fails.
 FOURTH ASSIGNMENT OF ERROR {¶ 45} "DEFENDANT/APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 46} A claim that a verdict is against the manifest weight of the evidence requires a reviewing court to review the entire record and weigh the evidence, including witness credibility, and determine whether, "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 47} Jones was found guilty of attempted murder, a violation of R.C.2923.02(A) and 2903.02(A). Under R.C. 2923.02(A) attempt is defined, in pertinent part, as "no person, purposely * * *, shall engage in conduct that, if successful, would constitute or result in the offense." Under R.C. 2903.02(A), murder, in pertinent part, is defined as "no person shall purposely cause the death of another."
 {¶ 48} Regina testified that Jones shot her with a revolver and he did not reload the gun. (Tr. 204). She stated that he fired the gun five times. (Tr. 204). She explained that she had six bullet wounds in the stomach, three in the breast, two in the side of her chest, and one in the wrist. (Tr. 232). She also testified as to other marks on her body that resulted from the altercation. (Tr. 232-234). She testified that she had 18 marks from the bullet wounds and that she derived that information from the hospital report. (Tr. 233-234). She also stated that during the shooting Jones said to her, "Die, Bitch." (Tr. 207).
 {¶ 49} Testimony from Regina's niece, Lauren Gordon, corroborated Regina's testimony that Jones fired the gun five times. Lauren testified that she was on the phone with Regina as the shooting was happening and she heard five shots. (Tr. 265). However, Regina's neighbor, Talmage Johnson, indicated that he heard only two shots at most. (Tr. 260). Yet, he qualified his testimony by indicating that he was not sure of the exact number of shots because it was usual for the neighborhood and he had been asleep prior to the shots going off. (Tr. 260). *Page 12 
 {¶ 50} Furthermore, Dr. Brian Gruber corroborated that Regina had multiple gunshot wounds. (Tr. 311). He explained, "There was a wound, a through-and-through wound, to the left wrist. There was a wound on the left and right side of the neck. There were multiple wounds to the left breast as well as to the lower abdominal area as well." (Tr. 312-313). He then stated that she had six total wounds to the abdomen and five to the breast area. (Tr. 313). He explained that he counted both exit and entrance wounds when considering the number of wounds. (Tr. 313).
 {¶ 51} Considering all the above, the verdict was supported by the manifest weight of the evidence. Shooting a person multiple times is an indication of wanting to cause harm to the person. See State v.Salinas (1997), 124 Ohio App.3d 379, 390, citing State v. Gregory
(1993), 90 Ohio App.3d 124; State v. Phillips (1991),75 Ohio App.3d 785. When that is taken together with the statement, "Die, Bitch," the result is a clear indication that there was an attempt to murder the person by shooting the person.
 {¶ 52} Consequently, it is clear the jury did not lose its way. This assignment of error lacks merit.
 FIFTH ASSIGNMENT OF ERROR {¶ 53} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE ERRORS AS SET FORTH HEREIN."
 {¶ 54} Pursuant to the doctrine of cumulative error, a conviction will be reversed where the cumulative effect of multiple errors deprives a defendant of his constitutional right to a fair trial, even though each individual error does not constitute cause for reversal. State v.DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. Nevertheless, a defendant's claim of cumulative error is without merit in instances where prejudicial error is nonexistent. State v.Garner, 74 Ohio St.3d 49, 64, 1995-Ohio-0168; State v. Moreland (1990),50 Ohio St.3d 58, 69.
 {¶ 55} In the instant case, there are only two possible errors this court can find. The first possible error is the other acts evidence when Regina testified that Jones had previously abused here. The second is that purposely was not defined in the jury instruction. However, as explained under both of these assignments, any error that occurred did not result in prejudice. Moreover, even when they are considered *Page 13 
together, it still does not result in prejudice. The evidence of shooting Regina and stating "Die, Bitch," shows that the result would not have been changed had the errors not occurred. This assignment of error lacks merit.
 SIXTH ASSIGNMENT OF ERROR {¶ 56} "THE SENTENCE OF DEFENDANT/APPELLANT IS UNCONSTITUTIONAL IN THAT THE SAME WAS IMPOSED UPON DEFENDANT/APPELLANT FOLLOWING JUDICIAL FACT FINDING IN VIOLATION OF SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 57} The argument made under this assignment of error is based upon the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856. In Foster, the Ohio Supreme Court held that the provision of the Revised Code relating to nonminimum (R.C 2929.14(B)), maximum (R.C. 2929.14(C)), and consecutive (R.C. 2929.14(E)(4)) sentences are unconstitutional because they require judicial findings of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant. Id. at paragraphs one and three of the syllabus. The Court then went on to hold that those unconstitutional provisions could be severed. Id. at paragraphs two and four of the syllabus. Since the provision could be severed, "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus.
 {¶ 58} Thus, the implication of Foster is that trial courts are no longer required to give reasons or findings prior to imposing maximum, consecutive, and/or nonminimum sentences. It has full discretion to impose a sentence within the statutory range. Id. at, ¶ 100. However, if a trial court does state findings and reasons for imposing maximum, consecutive and/or nonminimum sentences, the sentence must be vacated and the case remanded to the trial court for a new sentencing hearing in order for the sentence to comport with Foster. Id. at ¶ 104. Once this is ordered, a defendant, while entitled to a new sentencing hearing, may choose to waive the hearing, and have the sentencing court act on the record before it. Id. at ¶ 105. *Page 14 
 {¶ 59} The Ohio Supreme Court explained:
 {¶ 60} "These cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion. We do not order resentencing lightly. Although new sentencing hearings will impose significant time and resource demands on the trial courts within the counties, causing disruption while cases are pending on appeal, we must follow the dictates of the United States Supreme Court. Ohio's felony sentencing code must protectSixth Amendment principles as they have been articulated.
 {¶ 61} "Under R.C. 2929.19 as it stands without (B)(2), the defendants are entitled to a new sentencing hearing although the parties may stipulate to the sentencing court acting on the record before it. Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively. While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties.United States v. DiFrancesco (1980), 449 U.S. 117." Id. at ¶ 104-105.
 {¶ 62} In the instant case, the trial court sentenced Jones to ten years for the attempted murder conviction and three years for the gun specification. The ten year sentence is a maximum sentence. The three year gun specification is a mandatory sentence. R.C. 2941.145(A). At the sentencing hearing, the trial court made a finding that Jones had the greatest likelihood of recidivism. In the journal entry, the trial court made no maximum sentence findings.
 {¶ 63} The sentences were also ordered to be served consecutively. The trial court did make statutory consecutive sentence findings. For a firearm specification, however, the consecutive sentence findings are not needed. Pursuant to R.C. 2929.14(E)(1)(a) firearm specifications are to be served consecutively to the sentence imposed for the underlying offense. See State v. Marino, 11th Dist. No. 2006-L-019, 2006-Ohio-3223, ¶ 12. That section was not rendered unconstitutional by Foster. Id. Therefore, although the trial court should not have made consecutive sentence findings, the consecutive sentence was clearly authorized by law. *Page 15 
 {¶ 64} Given the above, since a maximum sentence finding was made at the sentencing hearing, the sentence is vacated. However, it is noted that the firearm specification was mandatory and pursuant to R.C.2929.14(E)(1) it is to be served consecutive to the underlying offense. This assignment of error has merit.
 {¶ 65} For the foregoing reasons, the conviction is hereby affirmed. However, the sentence is vacated and the case is remanded to the trial court for resentencing.
 DeGenaro, P.J., concurs. Waite, J., concurs. *Page 1