PATRICIA ANN BLACKMON, J.:
{¶ 1} Michael T. Grayson ("Grayson") appeals from the trial court's failure to merge his multiple convictions for improperly discharging a firearm into a habitation *1027 and felonious assault. Grayson assigns the following errors for our review:
I. The trial court committed plain error in failing to merge four counts of improperly discharging a firearm at an occupied structure into a single count.
II. The trial court erred in failing to merge appellant's convictions for discharging a firearm into a habitation with his convictions for felonious assault.
{¶ 2} Having reviewed the record and pertinent law, we affirm Grayson's sentence in Case No. CR-15-597625-A and vacate Grayson's sentence in Case No. CR-16-606430-A. The apposite facts follow.
{¶ 3} On May 18, 2016, Fannie Loper ("Loper") and her friend Roychemere Bolling ("Bolling") were asleep on the living room floor of Loper's sister's home, which is one of the downstairs units in a quadruplex located at 6538 Newman Avenue in Cleveland. Grayson is Loper's ex-boyfriend and the father of two of her four children. At approximately 9:00 a.m., Loper and Bolling woke up to see Grayson peering into the front living room window of the house. Grayson fired six shots into the window. Two bullets struck Bolling, one in the knee and one in the back. Loper, Bolling, three of Loper's children, Loper's sister, and Loper's sister's boyfriend were all in the house at the time of the shooting. Nobody else was injured during the incident.
{¶ 4} On May 31, 2016, Grayson was charged in a ten-count indictment in Cuyahoga C.P. No. CR-16-606430-A as follows: four counts of improperly discharging a firearm into a habitation in violation of R.C. 2923.161(A)(1) ; one count of felonious assault in violation of R.C. 2903.11(A)(1) ; two counts of felonious assault in violation of R.C. 2903.11(A)(2) ; one count of having weapons while under disability in violation of R.C. 2923.13(A)(3) ; and two counts of endangering children in violation of R.C. 2919.22(A). In counts one through seven, Grayson was charged with one-and-three-year firearm specifications.
{¶ 5} On September 30, 2016, after a jury trial, Grayson was found guilty of all counts, including the firearm specifications.
{¶ 6} On October 6, 2016, the court sentenced Grayson to five years in prison on each of the four improperly discharging a firearm into a habitation convictions and three years in prison for the firearm specifications, to run consecutively, for a total of 23 years in prison. The court merged the two assault counts associated with Bolling and sentenced Grayson to eight years in prison for this offense. Additionally, the court sentenced Grayson to eight years in prison for the assault associated with Loper, 18 months for the weapons under disability conviction, and six months in prison for each child endangering conviction, all to run concurrent[1] to the 23-year prison sentence.
Merger of Improperly Discharging a Firearm into a Habitation Offenses
{¶ 7} Pursuant to R.C. 2923.161(A)(1), "[n]o person, without privilege to do so, shall knowingly * * * [d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual * * *." Under R.C. 2909.01(C), an "occupied structure" is a *1028 house or building, inter alia, "to which any of the following applies":
(1) It is maintained as a permanent or temporary dwelling, even though it is temporarily unoccupied and whether or not any person is actually present.
(2) At the time, it is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present.
(3) At the time, it is specially adapted for the overnight accommodation of any person, whether or not any person is actually present.
(4) At the time, any person is present or likely to be present in it.
{¶ 8} In simpler terms, a violation of R.C. 2923.161(A)(1) occurs when an offender fires a gun into someone's habitation, regardless of the presence of people. See State v. Mallet , 8th Dist. Cuyahoga No. 76608, 2000 WL 1176880 (Aug. 17, 2000) ("a defendant can be convicted of improperly discharging a firearm even when his conduct did not create a risk of harm to another person").
{¶ 9} Similar to burglary, improperly discharging a firearm into a habitation "is not defined in terms of conduct toward another person." State v. Allen , 8th Dist. Cuyahoga No. 82618, 2003-Ohio-6908, 2003 WL 22972696, ¶ 21. The "victim," so to speak, of a burglary is the occupied structure. Ohio courts have held that "the burglary offenses punish trespasses into structures." State v. Marriott , 189 Ohio App.3d 98, 2010-Ohio-3115, 937 N.E.2d 614, ¶ 29 (2d Dist.). See also State v. Gardner , 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 67 (it is the defendant's "entry into the dwelling with the requisite intent that constitutes the crime" of burglary).
{¶ 10} In State v. Adkins , 8th Dist. Cuyahoga No. 95279, 2011-Ohio-5149, 2011 WL 4599819, ¶ 41, this court stated the following:
Should the state prevail in its argument that a defendant may be convicted on more than one count of burglary based upon the number of persons present in the residence when the defendant entered, it would turn 500 years of burglary law on its head. It would transform burglary from an offense against the sanctity of the dwelling house into an offense against the person.
{¶ 11} Neither Grayson nor the state cite law specifically holding that the number of convictions sustainable for improperly discharging a firearm into a habitation is dependant upon the number of people in the structure. This issue appears to be one of first impression for this court. In fact, the state admits in its appellate brief that "[i]f the Appellant shot several times into a high rise apartment complex and the subsequent criminal indictment contained counts for every resident of the apartment building this would be widely, and quite properly, criticized as unfair." To justify the four counts in the case at hand, the state argues that Grayson was aiming for Loper and Bolling, and Grayson's two children "were in immediate risk of death or great bodily injury" because they were asleep "in the next room over."[2]
{¶ 12} Grayson, on the other hand, argues that statutory interpretation of R.C. 2923.161(A)(1) supports one conviction in his case.
The state's theory of one unit of prosecution for every person residing in the *1029 structure would necessarily require this court to also hold that a single theft from the "Brady Bunch" home allows for nine separate burglary sentences because the state could charge in separate counts that the home is the permanent or temporary habitation of nine people; to wit: Mike, Carol, Marcia, Jan, Cindy, Greg, Peter, Bobby, and Alice.
{¶ 13} At trial, Loper testified that she and Bolling awoke on the morning of May 18, 2016, at approximately 9:00 a.m. after having fallen asleep earlier on the living room floor. According to Loper, she looked at her phone and there was a text message from Grayson stating "This shit ain't going to last long." Loper further testified, "When I woke up, I seen [Grayson] in the window. By the time I even recognized it was him, he started shooting." Loper stated that she, Bolling, her three children, and her sister were in the house when Grayson fired the shots into the front window.
{¶ 14} Bolling's testimony was consistent with Loper's; however, he stated that Loper's sister's boyfriend was also in the house when Grayson shot through the window. Bolling further testified as follows: "[T]he first shot went off and rang off over my head and hit the wall, and the second shot hit my knee. I got up and tried to run. Fell. The third shot hit my back. I ran to the back of the house. All the other shots just came in the house."
{¶ 15} Evidence in the record shows that Grayson fired six shots into the structure, emptying the .45 caliber revolver he was carrying. This court has held that a defendant's convictions should merge when he "fired multiple shots at one victim in rapid succession and did not have a separate animus for each count * * *." State v. Goldsmith , 8th Dist. Cuyahoga No. 90617, 2008-Ohio-5990, 2008 WL 4949853, ¶ 37. Compare State v. Wills , 69 Ohio St.3d 690, 635 N.E.2d 370 (1994), quoting State v. Caldwell , 9th Dist. Summit No. 14720, 1991 WL 259529 (Dec. 4, 1991) (defining "transaction," as the word relates to firearm specifications, as " 'a series of continuous acts bound together by time, space and purpose, and directed toward a single objective' ").
{¶ 16} Upon review, we find that under the facts of this case, Grayson may not be convicted of more than one count of improperly discharging a firearm into a habitation. The court erred by failing to merge the four counts of violating R.C. 2923.161(A)(1), and Grayson's first assigned error is sustained.
Allied Offenses-Improperly Discharging a Firearm into a Habitation and Felonious Assault
{¶ 17} We review a trial court's R.C. 2941.25 allied offenses determination under a de novo standard. State v. Williams , 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.
{¶ 18} Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, * * * the defendant may be convicted of only one."
{¶ 19} In State v. Ruff , 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 30-31, the Ohio Supreme Court detailed the allied offenses analysis:
Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.
As a practical matter, when determining whether offenses are allied offenses of *1030 similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.
{¶ 20} Grayson was convicted of one count of felonious assault in violation of R.C. 2903.11(A)(1), which states that "[n]o person shall * * * [c]ause serious physical harm to another * * *" and one count of felonious assault in violation of R.C. 2903.11(A)(2), which states that "[n]o person shall * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *." Additionally, Grayson was convicted of violating R.C. 2923.161(A)(1), which states that "[n]o person, without privilege to do so, shall knowingly * * * [d]ischarge a firearm at or into an occupied structure * * *."
{¶ 21} The conduct Grayson committed that lead to these charges was firing six shots into the window of a house in which his ex-girlfriend and her friend, among other people, were staying. Cleveland Police Detective Darryl Johnson testified that all six shots entered the house through the same front window and went into the room in which Loper and Bolling were sleeping. Loper testified that "[i]t happened too fast" and the gun did not "seem like it stopped" firing.
{¶ 22} Assuming for argument's sake that the offenses were committed with the same conduct and the same motivation-shooting into the house with the intention of harming Loper and Bolling-we turn to the dissimilar import prong of the Ruff analysis.
{¶ 23} In Ruff , the Ohio Supreme Court explained that "offenses are not allied offenses of similar import if they are not alike in their significance and their resulting harm." Id. at ¶ 21. When a "defendant's conduct put more than one individual at risk, that conduct could support multiple convictions because the offenses were of dissimilar import." Id. at ¶ 23.
{¶ 24} As discussed previously in this opinion, the harm caused by improperly discharging a firearm into a habitation is to the "occupied structure" itself. It is important to note that an "occupied structure" under the law need not have people present at the time of the offense. It is enough that it is someone's dwelling or habitation, or that there is a likelihood that any person would be present. R.C. 2909.01(C).
{¶ 25} The harm caused by Grayson's assault convictions, on the other hand, was to Loper and Bolling, respectively. Because the offenses of discharging a firearm and assault resulted in separate harm or risk, they are of dissimilar import and Grayson may be convicted of both.
{¶ 26} We are aware that this court has reached a similar conclusion when presented with different facts regarding whether improperly discharging a firearm into a habitation and felonious assault merge as allied offenses. See State v. Mallet , 8th Dist. Cuyahoga No. 76608, 2000 WL 1176880 (Aug. 17, 2000) ("felonious assault and [improperly] discharging a firearm at or into a habitation are not allied offenses of similar import * * * if an individual is not present in the house when the shots are fired"). However, Mallet was decided prior to the Ohio Supreme Court's release of the allied offenses test in Ruff .
{¶ 27} Accordingly, Grayson's second assigned error is overruled.
*1031 {¶ 28} Sentence vacated. Case remanded for a resentencing hearing at which the trial court shall merge allied offenses consistent with this opinion, and the state shall elect which allied offense to pursue on resentencing.
EILEEN A. GALLAGHER, P.J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS WITH SEPARATE OPINION

The court also sentenced Grayson to one year in prison in Cuyahoga C.P. No. CR-15-597625, to run concurrent to the 23-year prison sentence. Case No. CR-15-597625 was consolidated on appeal with Case No. CR-16-606430; however, none of Grayson's assigned errors or arguments relate to Case No. CR-15-597625. Therefore, we summarily affirm Grayson's conviction and sentence in Case No. CR-15-597625.

The state does not address the fact that, according to trial testimony, there was a third child asleep in the same room at the time.