[Cite as *State v. Johnson*, 2018-Ohio-1387.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105424**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# TORRANCE JOHNSON

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-609073-A

**BEFORE:** E.T. Gallagher, P.J., Stewart, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 12, 2018

**ATTORNEY FOR APPELLANT**

Timothy F. Sweeney
The 820 Building, Suite 430
820 West Superior Avenue
Cleveland, Ohio 44113-1800


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Shannon M. Raley
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, P.J.:

{¶1} Defendant-appellant, Torrance Johnson, appeals his convictions and sentence.

He claims the following two errors:

1.  Johnson's guilty plea to the amended charges was not made knowingly, voluntarily, and intelligently, and, as a result, the court's acceptance of that plea was in violation of Johnson's constitutional rights and Crim.R. 11.

2.  Johnson's convictions for (1) improperly discharging a firearm into a habitation, (2) felonious assault, and (3) discharge of a firearm on or near a prohibited premises should have been merged into a single conviction on only one of those allied offenses of similar import.  The trial court's failure to merge in these circumstances violated Ohio merger law and Johnson's rights to due process and against being subjected to double jeopardy.

{¶2} We find no merit to the appeal and affirm the trial court's judgment.

## I.  Facts and Procedural History

{¶3} Johnson was charged with six counts of improperly discharging a firearm into a habitation, one count of having a weapon while under disability, one count of aggravated menacing, one count of receiving stolen property, four counts of felonious assault, and one count of discharging a firearm on or near a prohibited premises.  The discharging a firearm into a habitation and discharging a firearm on or near a prohibited premises counts included one- and three-year firearm specifications.

{¶4} The charges resulted from an incident that occurred in August 2016. Following an argument, Johnson's wife locked herself in a bathroom.  Johnson, who had been drinking, took a handgun and fired two rounds above the bathroom door where his wife was hiding.  Still angry, Johnson went outside and fired two more shots into the

house. At the time Johnson fired the shots, his wife, children, and other relatives were present in the house.

{¶5} Pursuant to a plea agreement, Johnson pleaded guilty to one count of discharging a firearm into a habitation with a three-year firearm specification, one count of having a weapon while under disability, one count of receiving stolen property, and one count of discharging a firearm on or near a prohibited premises. Johnson also pleaded guilty to one count of felonious assault, which was amended to change the name of the victim.

{¶6} The court sentenced Johnson to six years in prison on the discharging a firearm into a habitation conviction to be served consecutive to the three-year firearm specification on that count, for an aggregate nine-year sentence. The court also sentenced Johnson to 24 months for having a weapon while under disability, 12 months for receiving stolen property, six years for felonious assault, and 24 months for discharging of a firearm on or near a prohibited premises conviction, to be served concurrently with the nine-year sentence on the discharging a firearm into a habitation conviction.

{¶7} Johnson now appeals his convictions and sentence.

## II.  Law and Analysis

### A.  Guilty Plea

{¶8} In his first assignment of error, Johnson argues his guilty pleas should be vacated as involuntarily made because the trial court failed to ensure that he understood the factual basis for the allegations alleged in each count. Johnson also contends that

despite his protestations of innocence with respect to the felonious assault charge, the trial court failed to comply with the additional requirements established in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), for accepting a guilty plea accompanied by a genuine claim of innocence.

{¶9} A guilty plea that is not knowingly, intelligently, and voluntarily made violates the Ohio and United States Constitutions. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Crim.R. 11(C) sets forth certain constitutional and procedural safeguards with which the trial court must comply prior to accepting a guilty plea to ensure the voluntariness of the plea. As relevant here, Crim.R. 11(C)(2) provides that the trial court shall not accept a guilty plea in a felony case without personally addressing the defendant and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶10} The trial court must strictly comply with those provisions of Crim.R. 11(C)(2) that relate to the waiver of constitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, syllabus. As to the nonconstitutional aspects of Crim.R. 11(C)(2), which includes a defendant's right to have an understanding of the "the nature of the charges" and "the maximum penalty involved" and to be informed of and understand the effect of a guilty plea, substantial compliance is required. *Id*. at ¶ 14; *State v. Moore*, 8th Dist. Cuyahoga No. 101658, 2015-Ohio-1026, ¶ 12.

{¶11} "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). If a trial court fails to substantially comply with one of the nonconstitutional aspects of Crim.R. 11(C)(2), a determination must be made as to whether the trial court partially complied or completely failed to comply the requirement at issue. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 32. If the trial court partially complied, the plea is properly vacated only if the defendant demonstrates prejudice. *Id*. If the trial court completely failed to comply, the plea must be vacated; a showing of prejudice is not required. *Id.*

{¶12} There is no precise method for determining a defendant's subjective understanding of the plea proceedings. *State v. Davner*, 8th Dist. Cuyahoga Nos. 104745 and 105144, 2017-Ohio-8862, ¶ 43. However, if a defendant received the proper information during the plea colloquy, we may presume that he understood it. *Id.,* citing

*State v. Cardona*, 8th Dist. Cuyahoga No. 75556, 1999 Ohio App. LEXIS 6064, 12 (Dec. 16, 1999). Therefore, where a trial court complies with Crim.R. 11(C)(2) in accepting a plea, there is a presumption that the defendant's plea was knowingly, intelligently, and voluntarily made. *Id.*, citing *State v. Alexander*, 8th Dist. Cuyahoga No. 103754, 2016-Ohio-5707, ¶ 11.

{¶13} It is undisputed that the trial court fully complied with Crim.R. 11(C)(2) with respect to Johnson's constitutional rights. Johnson asserts that he did not understand the nature of the charges against him because he only had a ninth grade education and because the trial court failed to explain the elements of each offense.

{¶14} However, neither a detailed recitation of the elements of the charges nor an inquiry as to whether the defendant understands the elements of the charges is required unless the totality of the circumstances indicate that the defendant did not understand the charges. *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 56; *State v. Krcal*, 8th Dist. Cuyahoga No. 80061, 2002-Ohio-3634, ¶ 25.

{¶15} Although Johnson asserts he did not understand the charges due to his limited education, the record shows that Johnson was endeavoring to obtain his GED, had taken the test once, and only failed the math section. He indicated that he could read and write and was not under the influence of alcohol, drugs, or medications that would affect his ability to understand the proceedings. And Johnson's competency was never raised as an issue in this case. Therefore, the record is devoid of any circumstances indicating that Johnson was unable to understand the proceedings.

**{¶16}** Before explaining the charges, the court invited Johnson to ask any questions he may have during the plea proceedings. In this regard, the court instructed:

> [I]f you have any questions of me about anything I say or, perhaps a question I might ask you that you don't quite understand, let me know and I will clear it up.
>
> Likewise, if you would like to have the opportunity to speak with [your lawyer] about something in private, let me know. I will make sure that happens as well.
>
> Does that sound like a plan?
>
> THE DEFENDANT: Yes, sir.

(Tr. 8.)

**{¶17}** During the colloquy, the trial court identified each charge by name with its felony classification and described the range of potential penalties associated with each charge, including the maximum penalties. (Tr. at 14-17.) The court also explained the potential aggregate sentence Johnson could receive, ensured that Johnson understood that he was forfeiting the firearm and magazine used in the crimes, and explained the terms of postrelease control. (Tr. 18.) After reviewing the charges and penalties, but before accepting Johnson's pleas, the court again asked if Johnson had any questions about anything the court had discussed up to that point in the proceedings, and Johnson replied: "No, sir." Although Johnson had indicated that he understood all aspects of the proceedings, the court nevertheless inquired further:

> THE COURT: Do you feel that you have a complete understanding of what it is that you are pleading to, what the maximum penalties might be, and all the rights that you have that you are giving up or waiving?
>
> THE DEFENDANT: Yes, sir.

The trial court discussed all the information necessary for Johnson to make an informed decision regarding his guilty pleas. Therefore, in the absence of any evidence to the contrary, we may presume that Johnson understood the nature of the charges to which he pleaded guilty.

{¶18} Johnson nevertheless argues that his guilty pleas should be vacated because the trial court failed to comply with the additional requirements of an *Alford* plea. When a defendant makes an *Alford* plea, the trial court has a duty to make further inquiries to ensure the voluntariness of his plea. *State v. Alvelo*, 8th Dist. Cuyahoga No. 104422, 2017-Ohio-742; *Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. An *Alford* plea occurs when a defendant pleads guilty while simultaneously maintaining actual innocence of the charges. *Alvelo* at ¶ 23-25.

{¶19} Johnson contends he asserted his innocence of the felonious assault charge when he told the court, moments before pleading guilty, that he was "not trying to hurt anybody." The state, however, maintains that Johnson never asserted his innocence and that Johnson's statement that he did not intend to hurt anyone was an expression of regret rather than a declaration of innocence that would elicit an *Alford* inquiry. We must, therefore, determine whether Johnson's assertion that he did not intend to hurt anyone constitutes a protestation of innocence that would give rise to an *Alford* plea.

{¶20} In *Alford*, the defendant stated: "I'm not guilty, but I plead guilty." *Alford* at 28. The United States Supreme Court determined that Alford's assertion that he was not guilty was sufficient to require the trial court to inquire as to whether Alford had a rational basis for pleading guilty. In *State v. Padgett*, 67 Ohio App.3d 332, 586 N.E.2d 1194 (2d

Dist.1990), the Second District held that the following was a protestation of innocence that required the trial court to conduct an *Alford* inquiry:

> [Padgett's attorney]: * * * That is a correct statement of the plea negotiations. At this time Mr. Padgett is ready to tender a plea of guilty to two counts of aggravated burglary.
>
> THE COURT: Is this what you want to do?
>
> THE DEFENDANT: Yeah. I want to go ahead and do that.
>
> * * *
>
> COURT: And you understand in each case you have a right to face the people that accuse you of these charges?
>
> DEFENDANT: Yeah. She was lying. * * *
>
> COURT: Do you understand what you are charged with?
>
> DEFENDANT: Yeah. That's a lie.

{¶21} Johnson argues the following exchange demonstrates that he protested his innocence at the plea hearing in this case:

> THE COURT: As a total aside here, your emotional response to me at this point seems genuine, and I mean that.
>
> What is disappointing for me about that, these are serious charges which your response now tells me, anyways, that you are not just some terrible monster thug.
>
> THE DEFENDANT: Can I speak, please?
>
> THE COURT: Yeah.
>
> THE DEFENDANT: I understand what I did was wrong. Like, I can't make an excuse what I did because wrong is wrong.

At the time, I was just angry, and drinking. My wife, we was both having problems. Her mother, auntie moving in, we not getting along. It was — we were both drinking. I shouldn't did what I did.

THE COURT: I get all that.

THE DEFENDANT: I'm not trying to hurt nobody. I promise I wasn't.

THE COURT: I understand that.

THE DEFENDANT: I didn't want to leave. I was angry.

THE COURT: Here. We can talk more about those issues at the time of sentencing. I'm just trying to share with you again what I see and what I perceive to be a genuine display of emotion.

I'm disappointed. That's all that I am compelled to tell you. We will talk more about it as we go through. Fair enough?

THE DEFENDANT: Yes, sir.

**{¶22}** However, Johnson pleaded guilty to one count of felonioius assault in violation of R.C. 2903.11(A)(2), which states, in relevant part, that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon." "Knowingly" is the mens rea element of the offense. R.C. 2901.22(B) states that "[a] person acts knowingly, *regardless of his purpose*, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." (Emphasis added.)

**{¶23}** Johnson admitted that he fired gunshots into an occupied structure. Although he may not have specifically intended to hit a particular person with a bullet, he knew that by firing a gun into an occupied structure, he was creating a substantial risk that

someone would be hit by a bullet. He knew that his conduct could cause serious physical harm to someone. Therefore, Johnson never denied the charges; he simply expressed remorse.

{¶24} Padgett categorically denied the charges against him, not once, but twice. Alford's assertion of innocence was clear and unequivocal. Indeed, Alford never wavered from his claim of innocence during a subsequent hearing on his claim of innocence. Johnson asserted that he never meant to hurt anyone but admitted in the same breath that his conduct "was wrong," and that he could "not make an excuse" for it. Moreover, Johnson never denied committing the offenses. Unlike Alford and Padgett, who never conceded guilt, Johnson admitted that he committed the crimes and took full responsibility for them. We agree with the state that Johnson's remark that he did not mean to hurt anyone was an expression of remorse rather than an affirmative declaration of innocence and was, therefore, insufficient to trigger an *Alford* inquiry.

{¶25} The first assignment of error is overruled.

## B. Allied Offenses

{¶26} In the second assignment of error, Johnson argues his discharging a firearm into a habitation, felonious assault, and discharging a firearm on or near a prohibited premises convictions should have merged for sentencing.

**{¶27}** Johnson neither raised the issue of merger nor objected to his sentence in the trial court. He therefore forfeited all but plain error. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 21-25. Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To prevail on a claim of plain error, the defendant must demonstrate that but for the error, the outcome of the proceedings clearly would have been different. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus; *Rogers* at ¶ 22.

**{¶28}** R.C. 2941.25 codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, prohibiting multiple punishments for the same offense. Under R.C. 2941.25(A), when the same conduct by the defendant "can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." However, R.C. 2941.25(B) provides:

> Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶29}** Multiple offenses do not merge if (1) the offenses are dissimilar in import or significance, (2) the offenses were committed separately, or (3) the offenses were committed with a separate animus or motivation. *State v. Ruff*, 143 Ohio St.3d 114,

2015-Ohio-995, 34 N.E.3d 892, syllabus. Two or more offenses are dissimilar within the meaning of R.C. 2941.25(B) "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id*. at syllabus.

**{¶30}** Johnson's discharging a firearm into a habitation, felonious assault, and discharging a firearm on or near a prohibited premises convictions do not merge because they were committed against separate victims.

**{¶31}** Johnson pleaded guilty to Count 1 of the indictment, which alleges that Johnson improperly "discharg[ed] a firearm at or into an occupied structure that is a permanent or temporary habitation of Jamese Johnson." The indictment identifies Jamese Johnson's home as the victim of the offense rather than a person.

**{¶32}** Johnson also pleaded guilty to Count 14, which alleges that Johnson improperly discharged a firearm on or near a prohibited premises. In *State v. James*, 8th Dist. Cuyahoga No. 102604, 2015-Ohio-4987, ¶ 34, we held that because discharging a firearm on or near a prohibited premises is a strict liability offense, the victim of such an offense is the public at large. Therefore, while the victim of Johnson's discharging a firearm on or near a prohibited premises was the general public, the victim of his discharging a firearm into a habitation conviction was the occupied home of Jamese Johnson. Because these offenses were committed against separate victims, they are dissimilar in import and not subject to merger under R.C. 2941.25.

**{¶33}** Finally, Johnson pleaded guilty to felonious assault in violation of R.C. 2903.11(A)(2), as alleged in Count 10 of the indictment. R.C. 2903.11(A)(2) prohibits a person from knowingly causing or attempting to cause physical harm "to another." Unlike Johnson's other offenses, which were committed against the an occupied structure and the public at large, his felonious assault conviction requires a human victim. Count 10, as amended, alleged that Johnson knowingly caused or attempted to cause physical harm to a person identified in the indictment as "Bennette Smith."

**{¶34}** As previously stated, the victim of Johnson's improper discharging of a firearm into a habitation was the occupied home of Jamese Johnson. Bennette Smith was the victim of Johnson's felonious assault conviction, and society at large was the victim of Johnson's improper discharging of a firearm on or near a prohibited premises conviction. Because Johnson committed these offenses against three different victims, they are dissimilar in import, and the trial court properly sentenced Johnson on all three offenses.

**{¶35}** The second assignment of error is overruled.

**{¶36}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, PRESIDING JUDGE

SEAN C. GALLAGHER, J., CONCURS WITH
SEPARATE CONCURRING OPINION
MELODY J. STEWART, J., CONCURS WITH MAJORITY
AND SEPARATE CONCURRING OPINION

SEAN C. GALLAGHER, J., CONCURRING:

{¶37} I concur with the majority decision, but write separately in the hopes of avoiding an analytical problem inherent in an overly broad reliance on *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, as the standard of review over all allied-offense issues. The fact that the state purported to name an individual as the victim of the discharging into a habitation crime, as demonstrated from the inclusion of separate charges for discharging into a habitation each naming a different occupant, is noteworthy. The problem with the state's position is that not all crimes are committed against identifiable victims. The discharging into a habitation statute punishes an individual for discharging a firearm into a habitation to prevent the victimization of those possibly present. It is for this reason that the crime is deemed committed against the habitation. Likewise, discharging a firearm over a road reflects the legislative attempt to prevent motorists from being harmed. Therefore, and setting aside the issue of multiple shots being fired for the sake of this discussion, discharging a firearm into a single habitation

with multiple people present cannot lead to multiple convictions for that act — although it could possibly lead to multiple convictions for felonious assault of those inside.

{¶38} The state's charging instrument in this case emphasizes the importance of recognizing that there is no need to resort to *Ruff* as the only mechanism to analyze allied-offense issues. *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 10, citing *State v. Childs*, 88 Ohio St.3d 558, 561, 728 N.E.2d 379 (2000). The statute R.C. 2941.25 and the progeny of cases discussing its application are "not the sole legislative declaration in Ohio on the multiplicity of indictments." *Id.* Appellate courts cannot get bogged down with determining whether separate victims exist for every crime under the *Ruff* framework if the legislature has clearly indicated an intent to punish an offender for the harm caused by his conduct. *State v. Grayson*, 8th Dist. Cuyahoga Nos. 105081 and 105082, 2017-Ohio-7175, ¶ 31 (S. Gallagher, J., concurring). As the majority recognized, the discharging a firearm into a habitation and discharging a firearm on or near a prohibited premises statutes are intended to punish offenders for the act regardless of the existence of a named victim.