[Cite as *State v. Anderson*, 2021-Ohio-2316.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2020 CA 0068 |
| JOSH'SHUN ANDERSON | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:     Appeal from the Richland County Court of Common Pleas, Case No. 2019-CR-00665

JUDGMENT:     Affirmed in part; Reversed and Remanded in part

DATE OF JUDGMENT ENTRY:     July 7, 2021

APPEARANCES:

For Plaintiff-Appellee

GARY BISHOP
Prosecuting Attorney
Richland County, Ohio

JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

For Defendant-Appellant

WILLIAM T. CRAMER, ESQ.
470 Olde Worthington Road – Suite #200
Westerville, Ohio 43082

*Hoffman, P.J.*

{¶1} Defendant-appellant Josh'shun Anderson appeals the judgment entered by the Richland County Common Pleas Court convicting him of five counts of felonious assault (R.C. 2903.11(A)(2)) with firearm (R.C. 2941.145) and forfeiture (R.C. 2941.1417) specifications, four counts of having a weapon under disability (R.C. 2923.13(A)(2),(3)), and one count of discharge of a firearm on or near prohibited premises (R.C. 2923.162(A)(3)), and sentencing him to an aggregate term of incarceration of 25 to 29 years. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On July 29, 2019, Appellant was in a romantic relationship with Courtney Melton. Jerrell Beasley previously was in a relationship with Melton and the couple shared two children. Beasley left Melton to be with Dalana Nabors, with whom he also shared children. Nabors was pregnant on July 29, 2019.

{¶3} In the afternoon hours of July 29, 2019, Beasley and Nabors decided to take their children swimming. Beasley called Melton because he wanted to pick up the daughters he shared with Melton to go swimming. Beasley and Melton argued. Beasley had Appellant's phone number, and decided to call Appellant to see if Appellant could convince Melton to allow the children to go swimming.

{¶4} Appellant told Beasley he could pick up the children. Beasley, Nabors, and their two children drove to the home Appellant shared with Melton on Remy Street in Mansfield, Ohio. Nabors was driving. She stopped short of reaching Appellant's house, as Beasley saw his children playing outside. He told the girls to go get their things because they were going swimming. Beasley told Nabors to drive around the block, avoiding Appellant's house, because he had a "bad feeling." Tr. 165.

{¶5} Nabors stopped the car at the end of Remy Street. One of Beasley's children was waiting for him. He started to talk to her, and saw Appellant and Melton approaching. Melton called the child to her, then took the child's arm and returned to the house. After Melton left with the child, Appellant pulled out a gun. Nabors yelled to Beasley to get back in the car, and began recording the incident with her cell phone. Appellant said to Beasley, "I've been waiting to get you." Tr. 166. Appellant began walking toward Beasley, saying, "Make one move, I'll blow your fucking face off." Tr. 174. Beasley jumped in the car. Appellant followed, shoving the gun at Beasley through the open car window. Nabors backed the car up, and turned down another street, losing Appellant. As Nabors began to drive away, Appellant fired his gun at the car. With the children screaming in the backseat, Nabors drove away. The incident was witnessed by a neighbor, Almedia Carter.

{¶6} Nabors stopped at a Family Dollar store parking lot, afraid to return home because Appellant and Melton knew where they lived. She called the police. Nabors and Beasley found a bullet hole on the passenger side which had not been there before, despite the fact on July 10, Beasley reported to police someone had fired a gun at his car. Meanwhile, Appellant jumped in a white truck with two other men and fled.

{¶7} Police responded to Remy Street. They found a spent shell casing. Melton was uncooperative with police and acted as if nothing had happened.

{¶8} After leaving the scene, Appellant contacted a friend of his, Takeshia Lane, and asked her to come pick him up. He asked Lane if he could stay at her house for a few days. Appellant brought a gun with him to Lane's house.

{¶9}   At 8:00 a.m. on August 2, 2019, Lane heard U.S. Marshalls knocking at her door.  Appellant threw his gun under Lane's baby's "pack and play" crib and fled to the basement.  Police asked Lane if Appellant was there.  She responded he had been, but was not there at the moment.  She began to cry because her baby was inside.  Officers retrieved the baby from the house and gave the baby to Lane, who was seated on the front porch.  Officers then searched the house.

{¶10}  Patrolman Jordan Moore was at the residence with U.S. Marshalls, as the Northern Ohio Violent Fugitive Task Force had asked for assistance.  Ptl. Moore was positioned at the back door.  He heard movement inside the home, followed by the back door swinging open.  Appellant stood in the doorway, completely naked.   Appellant tried to slam the door and flee into the home but the officer was able to give chase.  Appellant fell as he fled.  Ptl. Moore got on top of Appellant and fought with him, managing to place Appellant in handcuffs.

{¶11}  Officers recovered the gun from Lane's home.  Appellant's DNA was found on the gun.  When Appellant first spoke to police, he denied firing a gun at Beasley, and claimed Beasley fired a gun at him.

{¶12}  Appellant was indicted by the Richland County Grand Jury with five counts of felonious assault with firearm and forfeiture specifications, four counts of having a weapon under disability, and one count of discharging a weapon in a prohibited space (public road).  He pled no contest to the four counts of having a weapon under disability.  The remaining charges proceeded to jury trial in the Richland County Common Pleas Court.

{¶13} After the first day of trial on September 28, 2020, Appellant made a phone call from the jail. In the call, he said he didn't deny firing the weapon, acknowledging his DNA was on the gun. He stated, "I'm not denying I didn't shoot at the car." Tr. 593.

{¶14} Appellant testified at trial. Appellant testified he did not give Beasley permission to pick up the children, and during the phone call, Beasley said, "When I see you all I'm going to do something strange to you and that bitch." Tr. 635. Appellant took the statement as a threat. Because Melton was pregnant, he took a gun with him when Melton went to retrieve her child from Beasley. He testified as he approached the car, he heard Beasley say to Nabors, "Wait till they get closer." Tr. 641. Appellant testified he brandished the gun in order to get Beasley to let go of Melton's daughter. He testified when Beasley took a step toward him, he told Beasley if Beasley tried to attack him, he (Appellant) would shoot Beasley in the face. Appellant testified after Beasley got into the car, Beasley leaned out of the car and said, "If you didn't have that gun in your hand, I'd beat your ass. I'll be back. It's slow for you." Tr. 645. Appellant admitted pointing the gun at Beasley when Beasley was inside the car, stating he had the gun aimed at Beasley's foot.

{¶15} Appellant testified after beginning to drive away, Nabors put the car in reverse. Appellant testified he didn't want to know what would happen if the car got back to him. Appellant testified he then fired his gun in the direction of the car, but aimed it above the car as a warning shot. He testified the street was clear, and he knew the trees in the park down the street would catch the bullet.

{¶16} Appellant was convicted of all charges. The trial court merged Count 7 of having a weapon under disability with Count 6, and merged Count 10 of having a weapon

under disability with Count 9.  The court sentenced Appellant to 8 to 12 years on each count of felonious assault, 30 months incarceration for each of the two remaining counts of having a weapon under disability, 36 months incarceration for discharging a weapon in a prohibited place, and nine years incarceration for the firearm specifications.  The sentences for felonious assault were to run concurrently to each other but consecutively to the sentences for the remaining charges, which were to run consecutively with each other, for an aggregate term of 16 to 20 years incarceration plus the additional nine years on the firearm specification.

{¶17} It is from the October 8, 2020 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:


I. THE TRIAL COURT ERRED BY REFUSING TO PROVIDE A JURY INSTRUCTION ON AGGRAVATED MENACING AS AN INFERIOR DEGREE OFFENSE TO FELONIOUS ASSAULT.

II. THE CONVICTIONS FOR FELONIOUS ASSAULT WERE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.

III. THE TRIAL COURT VIOLATED PRINCIPLES OF DOUBLE JEOPARDY AND R.C. 2941.25 BY REFUSING TO MERGE DISCHARGING A FIREARM NEAR PROHIBITED PREMISES INTO FELONIOUS ASSAULT.

IV. THE TRIAL COURT ERRED IN MERGING THE WEAPON UNDER DISABILITY COUNTS PURSUANT TO R.C. 2941.25.

I.

**{¶18}** Appellant argues the trial court erred in denying his request for a jury instruction on aggravated menacing as an inferior degree offense to felonious assault.

**{¶19}** Appellant was charged with felonious assault in violation of R.C. 2903.11(A)(2), which provides:

> (A) No person shall knowingly do either of the following:
>
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶20}** Aggravated menacing is defined by R.C. 2903.21 as follows:

> (A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family. In addition to any other basis for the other person's belief that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family, the other person's belief may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

**{¶21}** This Court has previously held aggravated menacing is an inferior degree offense of felonious assault. *State v. Lodico*, 5th Dist. Stark No. 2005CA00318, 2006-Ohio-5714, ¶33, *citing State v. Guddy*, Cuyahoga App. No. 80390, 2002-Ohio-3102, ¶15.

**{¶22}** A jury charge on a lesser included or an inferior degree offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser or inferior offense. *See, e.g., State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus. In making this determination, the court must view the evidence in a light most favorable to the defendant. *State v. Smith,* 89 Ohio St.3d 323, 331, 731 N.E.2d 645(2000). Nevertheless, an instruction is not warranted every time any evidence is presented on a lesser-included offense. There must be "sufficient evidence" to "allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense." *State v. Shane*, 63 Ohio St.3d at 632–633, 590 N.E.2d 272; *State v. Conway*, 108 Ohio St.3d at 240,842 N.E.2d at 1027, 2006–Ohio–791 at ¶ 134. In *Shane,* the Ohio Supreme Court cautioned:

> Past decisions of this court have sometimes given the erroneous impression that, whenever there is "some evidence" that a defendant in a murder prosecution may have acted in such a way as to satisfy the requirements of the voluntary manslaughter statute, an instruction on the inferior-degree offense of voluntary manslaughter must always be given. See, e.g., *State v. Muscatello* (1978), 55 Ohio St.2d 201, 9 O.O.3d 148, 378 N.E.2d 738, paragraph four of the syllabus. See, also, *Tyler, supra*, 50 Ohio

St.3d at 37, 553 N.E.2d at 592. That clearly never has been the law in this state, nor is it the law today. The "some evidence" referred to in those cases is simply an abbreviated way of saying that a jury instruction must be given on a lesser included (or inferior-degree) offense when sufficient evidence is presented which would allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense.

To require an instruction to be given to the jury every time "some evidence," however minute, is presented going to a lesser included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser included (or inferior-degree) offense. Trial judges are frequently required to decide what lesser included (or inferior-degree) offenses must go to the jury and which must not. The jury would be unduly confused if it had to consider the option of guilty on a lesser included (or inferior-degree) offense when it could not reasonably return such a verdict.

**{¶23}** 63 Ohio St.3d at 632–33, 590 N.E.2d at 275.

**{¶24}** When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested jury instruction constituted an abuse of discretion under the facts and circumstances of the case. *State v. Miku*, 5th Dist. No. 2017 CA 00057, 2018-Ohio-1584, 111 N.E.3d 558, ¶ 53.

**{¶25}** Appellant argues his own testimony he aimed above the car, rather than at the car, and fired the gun toward the park merely to scare Beasley, is sufficient evidence to require the inferior degree offense instruction of aggravated menacing in this case.

**{¶26}** Even though the defendant's own testimony may constitute some evidence supporting a lesser offense, if the evidence as a whole does not reasonably support an acquittal on the higher offense and a conviction on a lesser offense, the court should not instruct on the lesser offense. *State v. Linzy*, 5th Dist. Richland No. 2012-CA-33, 2013-Ohio-1129, ¶ 85. Appellant gave three different contradictory statements concerning his firing of the gun on July 29, 2019. Initially, he denied to police he shot a gun, and claimed Beasley shot at him. In his call from the jail, he stated he told Beasley he was going to shoot him in the face, he wasn't denying he shot the gun because his DNA was all over it, and he stated, "I'm not denying I didn't shoot at the car." In his trial testimony, he explained the statement from the jail call. While the officer who testified earlier understood the statement to mean Appellant was not denying shooting at the car, Appellant testified he meant the statement as a denial he shot at the car. At trial, he testified he fired above the car, yet in the same direction as the car, as a warning shot, with no intention of hitting the car.

**{¶27}** We find the trial court did not abuse its discretion in finding Appellant's own testimony, which varied from his prior statements, was insufficient standing alone to reasonably support an acquittal of felonious assault and a conviction of aggravated menacing. Although Appellant testified he fired above the car with an intention to warn Beasley rather than to hit the car, Appellant's own testimony established he shot in the same direction as the car. He admitted to operating the slide of the firearm to chamber a

bullet while standing in the intersection prior to aiming and shooting the weapon.  While Appellant argues the testimony is not credible based on the location of the bullet and the prior incident on July 10, both Nabors and Beasley testified affirmatively there was not a bullet hole in their car prior to Appellant's firing of the weapon on July 29, 2019.  Further, Almedia Carter, a neighbor who witnessed the incident, testified Appellant aimed the gun towards the car.   In addition, Beasley testified when Appellant initially pulled out the gun, he stated, "I've been waiting to get you," and later threatened to blow Beasley's head off..

**{¶28}** We find while there was some evidence to support an instruction on aggravated menacing as an inferior degree offense, the trial court did not abuse its discretion in concluding the evidence did not reasonably support a finding of not guilty of felonious assault and guilty of aggravated menacing.

**{¶29}**  The first assignment of error is overruled.

II.

**{¶30}** In his second assignment of error, Appellant argues his convictions of felonious assault are against the manifest weight of the evidence.   He specifically argues the jury lost its way in determining he attempted to harm anyone in the car.  He argues while he may have had a motive to harm Beasley, he had no reason to try to harm the children or Nabors, and he had the opportunity to shoot Beasley earlier in the confrontation at close range, rather than waiting to shoot at a car moving away from him.

**{¶31}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶32}** Appellant was charged with felonious assault in violation of R.C. 2903.11(A)(2), which provides:

> (A) No person shall knowingly do either of the following:
>
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

**{¶33}** By Appellant's own testimony, he fired the gun in the direction of the car, not up in the air or away from the vehicle in a manner suggesting he only intended to fire a warning shot. Appellant earlier had threatened Beasley, and in his call from the jail admitted he told Beasley he was going to shoot him. A neighbor who witnessed the incident testified Appellant aimed the gun at the car. While Appellant argues "[f]iring a single shot at the back of a distant vehicle is a poor way to go about shooting someone you were just face-to-face with," there was evidence Nabors was filming the incident at the time Appellant was face-to-face with Beasley, which the jury could have concluded acted as a deterrent from firing the weapon at close range. Further, while there was evidence Nabors's vehicle had been shot at on July 10, both she and Beasley testified there was not a bullet hole in the vehicle before Appellant shot at the car on July 29, 2019. We find the jury did not lose its way in convicting Appellant of five counts of felonious

assault, one for each occupant of the vehicle and for Nabors's unborn child, and the judgment is not against the manifest weight of the evidence.

**{¶34}** The second assignment of error is overruled.

III.

**{¶35}** In his third assignment of error, Appellant argues the trial court erred in failing to merge the conviction of discharging a weapon into a prohibited premises with one of the convictions of felonious assault, as both involved the same act of firing the gun a single time.

**{¶36}** Appellant raised the issue of merger at sentencing. The trial court found the conviction of discharging a firearm near prohibited premises, in this case a public road, did not merge with felonious assault because it involved a separate, identifiable harm. The court noted there were homes and a community park where children play on the street where Appellant fired the gun.

**{¶37}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.2d 892, the Ohio Supreme Court revised its allied-offense jurisprudence. When considering whether there are allied offenses which merge into a single conviction under R.C. 2941.25(A), both the trial court and the reviewing court on appeal must first take into account the conduct of the defendant. *Id.* In other words, how were the offenses committed? *Id.* If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance - in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id.*

{¶38} Appellate review of an allied offense question is de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 12.

{¶39} The offense of discharging a firearm over a public road or highway is a strict liability offense, and the public is the victim of the offense. *State v. James*, 8th Dist. No. 102604, 2015-Ohio-4987, 53 N.E.3d 770, ¶ 34, *cause dismissed*, 146 Ohio St.3d 1403, 2016-Ohio-3146, 50 N.E.3d 569, ¶ 34. Accordingly, the offense does not merge with felonious assault. *See, e.g., State v. Wright*, 7th Dist. Mahoning No. 15 MA 0092, 2017-Ohio-1211, ¶ 24; *State v. Wood*, 10th Dist. Franklin No. 19AP-649, 2020-Ohio-4895, 160 N.E.3d 439, ¶ 50; *State v. Johnson*, 8th Dist. Cuyahoga No. 105424, 2018-Ohio-1387, 110 N.E.3d 863, ¶ 34

{¶40} In *State v. Williams*, 8th Dist. No. 107221, 2019-Ohio-794, 132 N.E.3d 1233, the defendant argued his offenses for murder and discharging a weapon over a public highway should merge. The court held the victim of the murder offense was a specific victim, while the victim of the discharging a firearm upon or over a public road or highway was the public at large, including the witnesses in the vicinity; the latter offense posed a great risk of harm to the public which was separate and differed in its significance from harm to a specific victim. *Id.* at ¶ 49.

{¶41} Likewise, in the instant case, the act of discharging the gun over a public road posed a risk of harm to the public, which is separate and differed in significance from the harm posed to the specific occupants of the vehicle. The evidence demonstrated the gun was fired in a residential neighborhood, during the afternoon hours when children were outside playing. Tr. 292. The gunshot was witnessed by at least one neighbor, Almedia Carter. By Appellant's own testimony, he shot directly toward a community park,

intending for the trees in the park to "catch" the bullet. Tr. 647. We find the trial court did not err in failing to merge the offenses of discharging a weapon over a public road and felonious assault, as the victims of each offense were different and the harm caused was separate and identifiable.

{¶42} The third assignment of error is overruled.

IV.

{¶43} In his fourth assignment of error, Appellant argues the trial court erred in the manner in which it merged the four counts of having a weapon under disability.

{¶44} In counts six and seven of the indictment, Appellant was charged with having a weapon under disability, in which his disability was a prior offense of violence. Count six related to the incident on July 29, 2019, while count seven related to Appellant's apprehension on August 2, 2019. In counts nine and ten, Appellant was charged with having a weapon under disability, in which his disability was a prior felony drug offense. Count nine related to the incident on July 29, while count ten related to Appellant's apprehension on August 2.

{¶45} The trial court determined it was required to merge the four counts into two counts because the evidence showed one count of possession on each date. However, the trial court merged count seven into count six and count ten into count nine, leaving two convictions for the same date of July 29, 2019. Appellant argues the trial court should have merged counts nine and ten into counts six and seven, or vice versa, leaving two convictions, one each for two separate dates.

{¶46} The State concedes the trial court improperly merged the weapons under disability convictions. Accordingly, the fourth assignment of error is sustained.

**{¶47}** The judgment of the Richland County Common Pleas Court sentencing Appellant on his convictions of having a weapon under disability is reversed. In all other respects, the judgment of conviction and sentence is affirmed.  This case is remanded for resentencing on the convictions of having a weapon under disability, in accordance with law and consistent with this opinion.


By: Hoffman, P.J.

Wise, John, J.  and

Delaney, J. concur